[698 NYS2d 226]

Stuart Levy et al., Appellants-Respondents, v Carol Management Corporation, Defendant, and Susan Teeman, Respondent-Appellant.

First Department, November 23, 1999

### APPEARANCES OF COUNSEL

No appearances for appellants-respondents or respondent-appellant.

### OPINION OF THE COURT

Per Curiam.

This case has been characterized by plaintiffs' vexatious and dilatory conduct in this extended frivolous litigation concluding with this frivolous appeal. It has generated enormous legal fees and wasted significant and valuable judicial resources. We presently focus on the frivolous appeal as to the issue of sanctions.

This landlord-tenant dispute has lasted close to a decade and a half and has occupied numerous courts. The prevailing prime tenant most recently sought to recover attorneys' fees, pursuant to Real Property Law § 234, from the husband and wife subtenants. The subtenants appealed the grant of attorneys' fees. That aspect of the case was settled just prior to the issuance of our decision on the appeal. The decision had been prepared after more than three months of work on the extensive file by this Court. Although we allowed withdrawal of the appeal, we invited the parties' submissions on the issue of *sua sponte* sanctions in connection with the appeal and to that extent retained jurisdiction (*see, Gruen v Krellenstein*, 244 AD2d 234, *lv denied* 92 NY2d 803).

Our review of the proceedings persuades us to impose sanctions. As appropriately characterized by the IAS Court, this was a "relatively uncomplicated piece of landlord-tenant litigation." The facts are simple and straightforward, but the procedural route, relentlessly prolonged by the subtenants, has been tortuous. A narrative of how this case developed is necessary to explain our action.

The tenant of record of apartment A-806 in 370 East 76th Street in Manhattan was defendant Susan Teeman, who commenced her tenancy in 1968. In 1977, she made the mistake of subleasing the premises to plaintiffs-appellants Levys. Teeman had to attend to her infirm parents in Chicago until she could arrange suitable nursing home care for them, but intended to return to her apartment once that matter was attended to. The landlord was defendant Carol Management Corporation (CMC). Plaintiff Stuart Levy drafted the sublease agreement for himself and his wife, Susan Levy. Although she did not sign the sublease, Susan Levy conceded in deposition testimony

that in doing so her husband also acted on her behalf, and that she had this entered into the sublease. Teeman agreed to secure the landlord's approval for the sublease and, in fact, sent a letter dated October 3, 1977 to CMC notifying it of the sublease. The subtenants paid Teeman, the primary tenant, with checks drawn on their joint account, some of which Susan Levy signed, evidencing her acknowledgment of her rental obligations. The sublease apparently was renewed in 1980 upon mutually agreeable terms. Teeman also accepted and executed renewal leases with the landlord then and subsequently.

During the early 1980's, the Levys made the acquaintance of a CMC vice-president who vacationed in the same location as them. That acquaintanceship apparently bore fruit for the Levys. The Levys learned from their acquaintance that the landlord had been considering a conversion to cooperative ownership for the building during a time period characterized by a sharply escalating cooperative market in New York City.

By notice dated March 28, 1985, Teeman terminated the sublease effective April 30, 1985. The Levys refused to vacate. Rather, the Levys had seized the opportunity to try to wrest the apartment away from the tenant of record by commencing an action by order to show cause against Teeman for declaratory and injunctive relief seeking a declaration that the Levys (i.e., both of them) were the prime tenants, staying any ejectment action and enjoining CMC from accepting a subscription offer for the apartment other than from the Levys. The Levys also sought attorneys' fees. The Levys, in a novel application of landlord-tenant law, alleged that the written sublease, timed to expire when the prime lease term expired, somehow was really tantamount to an assignment, somehow extinguishing the prime tenant's rights to the rent-stabilized apartment. The initial action had been dismissed when the Levys failed to serve a necessary party, unsurprisingly, Teeman, but was then refiled and served. Teeman counterclaimed for a judgment of possession and attorneys' fees.

In May 1985, CMC distributed a cooperative conversion plan for the building. However, the offering plan was provided to Teeman for informational purposes only. Curiously, on December 18, 1985, the Levys received a purchase agreement, which they immediately executed and for which they remitted a $1,000 down payment. However, by this time, litigation had been commenced, and the check was returned in January 1986. In the meantime, Teeman apparently had managed to secure, execute and return a subscription agreement, also with a down payment, which was accepted.

By order entered on or about November 3, 1986, Supreme Court, New York County (Edwards, J.), as affirmed by this Court (138 AD2d 987), denied the Levys' motion for declaratory relief, remanding for trial contested issues whether there was a rent overcharge and whether the primary lease was illusory, and, as between Teeman and CMC, whether the sublease was authorized, and enjoined the sale of shares to either party pending outcome of trial. Subsequently, both sides moved for summary judgment, and the matter was assigned to Justice Carol Arber. That court, by decision and order entered August 13, 1992, found that notice had been given by Teeman and acquiesced in by CMC. The court then granted Teeman summary judgment declaring her to be the valid prime tenant, and found no abandonment by CMC of any right to challenge the Levys' continuing occupancy. We affirmed to that extent, but severed the causes of action for ejectment and attorneys' fees (199 AD2d 140). The epic of an occupancy that, by then, was 15 years old, seven years after termination of the sublease, of course did not end here.

The ejectment and attorneys' fees branch of the action was assigned to Justice Walter Schackman. By decision and order entered November 28, 1995, the Levys were directed to vacate the apartment, but the attorneys' fees application was severed and referred to a Special Referee to hear and report. This Justice noted his frustration in trying to settle the action and his consternation that they refused to leave, despite our order effectively declaring the Levys' occupancy to be illegal. Meanwhile, attorneys' fees were still escalating. Justice Schackman observed the Levys' claim to be "frivolous * * * [and] completely without merit in law and fact and cannot be supported by reasonable argument" and imposed a sanction of $250.

Special Referee Julius Birnbaum next left his mark on this case. The Special Referee's report recommended an award of fees to Teeman on the basis of the sublease itself as well as the reciprocal provisions of Real Property Law § 234. The Referee specifically rejected Susan Levy's contention that, as a nonsignatory to the sublease, she was not liable for any award of legal fees. The matter was then set down for a determination of the amount of the award. The Levys separately moved to vacate the report, and Stuart Levy cross-moved in the main action to vacate Teeman's counterclaim for attorneys' fees and for the imposition of sanctions.

The late Justice Lewis Friedman was the next jurist to render a decision in this proceeding. By decision and order

entered October 14, 1997, Justice Friedman confirmed the Referee's report, and denied the Levys all relief. Justice Friedman, aside from granting the motion to confirm the report of the Special Referee and denying the Levys' motion to dismiss the counterclaim for counsel fees, awarded fees in connection with the "frivolous" motion to dismiss the counterclaim.

Justice Friedman, characterizing his decision as "the last gasp" of this 1985 litigation, which "should be brought to a prompt end," directed that there be no further delay. Justice Friedman was overly optimistic that his decision would end this litigation. Susan Levy requested that we stay the hearing to fix fees, which we denied. Plaintiffs also turned Justice Friedman's untimely death into an opportunity, seeking relief, by order to show cause, before Justice Barry Cozier to, in effect, vacate the deceased Justice Friedman's ruling, at that time already on appeal, and to dismiss the counterclaim for attorneys' fees. Justice Cozier, finding the motion to actually constitute a motion to renew and reargue, and finding the ploy to be "amazing," noted that all of the claims presented to him, in a 35-page affidavit consisting of 106 paragraphs "replete with repetition," had already been adjudicated. Yet another Justice of the Supreme Court now directed that there be an end to this frivolous litigation. The Levys were precluded from filing any further motions without leave of court, and were warned that further motions would open the door to "maximum sanctions."

The Levys' present appeal sought to reverse Justice Friedman's order confirming the report of the Special Referee awarding Teeman legal fees and denying the Levys' motion to dismiss the counterclaim for attorneys' fees.

The Levys, who had been merely subtenants with no legal rights to the subject rent-stabilized apartment, have spent approximately the last 14 years in an attempt to wrest the premises from the tenant of record, so that they could purchase the unit of the cooperative conversion as insiders. Of course, that opportunity has now passed, and this litigation took on a life of its own. The abject nonsense couched as legal argument that had been imposed on court after court was again presented for our review on appeal. Consistent with the reprehensible conduct of the Levys over the past decade and a half, this appeal was seemingly designed to financially break a person who did no more than enter a sublease with them. We also must note the ill-advised tactic, included in the appellate record, of asking a court of coordinate jurisdiction to change an

order issued by a deceased Justice of that court at a time when appellate remedies were already being pursued, a ploy that, at the least, was frivolous and likely was disingenuous. Our sanctions order is not predicated on that proceeding but in considering whether the Levys' conduct before this Court is in bad faith, we, logically, should be able to look comprehensively at past conduct.

In view of the settlement, we ordinarily would not want to delve into the substantive issue of whether Teeman was entitled to attorneys' fees pursuant to statute. However, certain remarks on the appellate argument become necessary to demonstrate the appeal's lack of merit and the compelling need for us to impose sanctions. Initially, Susan Levy's present contention before this Court that she was not a tenant after all, and therefore is not bound by the attorneys' fees clause under the sublease agreement, was meritless. She now claims to be merely an occupant. In our prior ruling, we already had recognized the validity of the lease and that she was bound by it. Numerous court rulings, including ours, were predicated on the identical positions of both Levys as subtenants under the sublease. Susan Levy's deposition testimony, her own direct participation in the voluminous pleadings and motion practice in this case, over the course of which she held herself out as having interests derived from the sublease, would have been a compelling basis to judicially estop her from now arguing to the contrary (*see, generally, Tymon v Linoki*, 16 NY2d 293; *Karasik v Bird*, 104 AD2d 758; *Clifton Country Rd. Assocs. v Vinciguerra*, 252 AD2d 792). Indeed, her claim for attorneys' fees under the sublease and her contention that she was overcharged in rent inextricably locked her in as a party bound when the sublease was adversely used against her. Rather, these very acts of seeking to gain a benefit from the sublease at the very least constituted her ratification of its terms and of her participation in it (*Gleason v Tompkins*, 84 Misc 2d 174). Moreover, when court after court declared her to be a subtenant under the sublease, she never demurred until the tide had irrevocably turned against her. As the motion court noted, when it suited her purposes for the first decade of litigation, Susan Levy held herself out to be a sublessee; then, when it no longer suited her purposes, she demoted herself to a mere occupant. In all fairness, she could not, on appeal, with any semblance of intellectual honesty, claim to be exempt from provisions of the sublease which she no longer liked. This, quintessentially, is the very subterfuge that the doctrine of estoppel

was created to prevent. She was in direct privity with the lessor, regardless of the formality of not physically signing the sublease. This entire line of argument was a falsification of the facts and was meritless in view of established authority.

Plaintiffs' claim that the right to attorneys' fees expired along with the sublease also was clearly spurious. It is axiomatic that when a tenant remains in possession upon expiration of a lease, "it is a holdover and, pursuant to common law, there is implied a continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original instrument" (*City of New York v Pennsylvania R. R. Co.*, 37 NY2d 298, 300). Such terms and conditions remain in effect during the period of the holdover and, "upon surrender, a cause of action for breach of said covenant [may] be timely brought." (*supra,* at 301.)

Simply put, these are not complicated, or unclear, or insufficiently answered, issues of law. The status of both Levys under the lease was already resolved. On any number of grounds, then, the issue of attorneys' fees should have been resolved before this appeal was brought.

Turning to our present reasoning regarding sanctions, we received notification that this case was being settled after significant efforts had been expended on the appeal by this Court. We then advised the parties that we were considering sanctions. Having thus provided the parties with an opportunity to be heard (*see, Flaherty v Stavropoulos*, 199 AD2d 301), and having received submissions on the issue, we now conclude that sanctions in this case are especially appropriate. We look at the broad pattern of the Levys' conduct in this regard and not just the question whether a strand of merit (*Stockler & Co. v Heller*, 189 AD2d 601, *lv denied* 81 NY2d 936), illusory at that, might be parsed from the overwhelming pattern of delay, harassment and obfuscation that has continued with the appeal. In fact, in *Heller*, the respondent even conceded the appellant's meritorious point, and we found the over-all case to be frivolous.

22 NYCRR 130-1.1 allows us to exercise our discretion to impose costs and sanctions on an errant party under circumstances particularly applicable here. The relief may include, *inter alia*, sanctions against the offending party or its attorney (22 NYCRR 130-1.1 [a]) in an amount to be determined by us, which we would make payable to the Lawyers' Fund for Client Protection (22 NYCRR 130-1.3; *Bogan v Royal Realty Co.*, 209 AD2d 178).

Whether we exercise our discretion depends on whether the proceeding results from "frivolous conduct." For these purposes, frivolous conduct can be defined in any of three manners: the conduct is without legal merit; or is undertaken primarily to delay or prolong the litigation or to harass or maliciously injure another; or asserts material factual statements that are false (22 NYCRR 130-1.1 [c]). Any of these three criteria would be satisfied here with regard to the appeal.

Among the factors we are directed to consider is whether the conduct was continued when it became apparent, or should have been apparent, that the conduct was frivolous, or when such was brought to the attention of the parties or to counsel (22 NYCRR 130-1.1 [c]), circumstances that are replete in this record as noted above. We additionally may consider what remedy is dictated by considerations of fairness and equity (*cf.*, *Steiner v Bonhamer*, 146 Misc 2d 10), factors clearly important here, as also noted above. Sanctions are retributive, in that they punish past conduct. They also are goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large. The goals include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics (*cf.*, *Matter of Kernisan v Taylor*, 171 AD2d 869).

An appeal that is part of a continuing effort by a plaintiff to harass or maliciously injure the defendant may be a predicate for sanctions (*Board of Educ. v Allen*, 192 AD2d 1099, *lv dismissed* 82 NY2d 846; *Strout Realty v Mechta*, 175 AD2d 201). That factor is present here. Motion practice several years after judgment, lacking legal support and intended only to delay enforcement of judgment, is a valid basis for sanctions (*Matter of Ministers of Refm. Prot. Dutch Church v 198 Broadway*, 76 NY2d 411). Where motions are redundant to matters already decided on the merits (*Matter of Sommer*, 183 AD2d 832, *lv denied* 80 NY2d 758), constituting a lengthy barrage of litigation to relitigate those already-decided matters (*Matter of Jemzura v Mugglin*, 207 AD2d 645, *appeal dismissed* 84 NY2d 977), but that protracted litigation continues, with rulings ignored, despite the court's warnings to cease delaying tactics (*Solow v Wellner*, 162 Misc 2d 565), sanctions are appropriate to punish frivolous litigation. Although, as noted, we are not imposing sanctions in response to matters not presently before us, the frivolous nature of the appeal must be understood in the context of the underlying protracted frivolous litigation. Sanctions often are tied directly to abuse of the judicial process

(*Gruen v Krellenstein, supra*; *Bell v New York Higher Educ. Assistance Corp.*, 76 NY2d 930), and, presently relevant, are especially warranted where the plaintiff remains undeterred despite the prior imposition of sanctions by the Supreme Court (*Jason v Chusid*, 78 NY2d 1099) or where the court otherwise clearly advises a vexatious litigant of the baseless nature of the litigation (*Martin-Trigona v Capital Cities/ABC*, 145 Misc 2d 405). These factors are well established throughout the record.

Although, elsewhere, we have noted the caution that sanctions ought not be imposed in such a manner as to restrict ultimately unpersuasive, yet good-faith, arguments requiring our review of existing law (*Nolan & Co. v Daly*, 170 AD2d 320), good faith is simply absent in the case before us.

The Levys now argue that the appeal was neither malicious nor frivolous insofar as Teeman's right to recover fees would have entitled her to several hundred thousand dollars. By that logic, which we reject, an award of sanctions would turn, not on the merits or the parties' course of conduct, but, rather, on the scale of the award.

Accordingly, we impose sanctions on the Levys in the amount of $8,000, payable to the Lawyers' Fund for Client Protection, and we direct that judgment be entered in accordance with 22 NYCRR 130-1.2 against plaintiffs in that amount.

SULLIVAN, J. P., TOM, LERNER and RUBIN, JJ., concur.

Sanctions imposed on plaintiffs Stuart Levy and Susan Levy in the amount of $8,000, payable to the Lawyers' Fund for Client Protection.