*738 OPINION OF THE COURT
Bernice D. Siegal, J.
The instant action to recover first-party no-fault benefits from defendant Countrywide Insurance Company was commenced on or about May 27, 1997. Attorney Amos Weinberg commenced this action purportedly on behalf of eight named plaintiffs, Park Health Center, Jamil Abraham, M.D., Michael Schur, D.C., Myong Choi, M.D., Robert Stoessel, Ph.D., Robert Ceglio, D.C., Ira Casson, M.D., and Leonard Koven, Ph.D., to recover for alleged services provided to the same assignor, Dale Grant. Issue was joined in June 1997. While on its face this matter appeared to be a simple “No Fault” trial, the issues were far more complicated, as the trial was interwoven with allegations of improprieties against counsel for plaintiffs and plaintiff Jamil Abraham. It is those allegations that gave rise to defendant’s request for sanctions against attorney Amos Weinberg and Dr. Abraham, which are the subject of this decision.
In March 2000, a pretrial deposition was held by defendant of an employee of plaintiff Park Health Center and a purported representative of each of the named plaintiffs. On June 26, 2002, the case was marked ready and proceeded to trial before this court. At trial, defendant claimed that Amos Weinberg, the attorney of record for plaintiffs, did not rightfully represent each and every purported plaintiff. Defendant presented evidence from Dr. Ceglio, by way of affidavit, and Dr. Stoessel, by way of in-court testimony, who claimed they never authorized attorney Weinberg to commence litigation on their behalf. The court also became aware that Dr. Koven was deceased and that his estate was subject to a United States bankruptcy proceeding commenced prior to his death.[1] Dr. Abraham was found in contempt for failing to comply with the decision and order of the United States Bankruptcy Court dated December 3, 2001 directing the transfer of Dr. Koven’s assets to a bankruptcy trustee. (In re Leonard I. Koven, Bankr Ct, ED NY, Dec. 3, 2001, Milton, J., case No. 897-82570-633.) Further, even if Dr. Koven had ever authorized collections on his behalf, it was apparently withdrawn on August 14, 1997. (See defendant’s exhibit H.)
The trial was adjourned to August 9, 2002, and leave was given to defendant to make a motion to dismiss based upon the *739 newly discovered facts and for the imposition of sanctions. These companion motions, the first to dismiss, to sever and to take additional depositions, and the second for sanctions against Dr. Abraham and attorney Weinberg, were made by defendant and noticed for August 9, 2002. They were adjourned on consent to September 13, 2002, when the parties stipulated to the following: that the motion to dismiss was withdrawn without prejudice to renew upon the completion of discovery, that depositions of Drs. Abraham, Casson, Schur and Choi would be held by November 26, 2002, and that their claims would be severed for trial. A control date for trial was set for December 10, 2002. The court set down the sanctions motion for a separate hearing and directed that both Dr. Abraham and attorney Weinberg appear and testify. Mr. Weinberg declined, but appeared on November 15, 2002, only after the court issued a contempt order.[2]
Given the facts that devolved from the testimony of Amos Weinberg, among others, and the documents admitted into evidence during the hearing, the court gave leave for Dr. Abraham to retain counsel to represent his interests in opposing the sanctions motion. After reviewing the evidence adduced at the hearing and the papers submitted pursuant to the motion to dismiss, the court dismissed the actions by way of written decision dated June 30, 2003. The court reserved its decision as to the imposition of sanctions, and makes its determination within this order.
The court finds that the actions of both attorney Amos Weinberg and plaintiff Dr. Jamil Abraham to be the very essence of frivolous conduct, warranting sanctions pursuant to 22 NYCRR 130-1.1 (c). The dismissal order has significant bearing on the imposition of sanctions as against both attorney Weinberg and Dr. Abraham, as the bases for dismissal form the foundation for guiding this court as to the behavior and actions of both Mr. Weinberg and Dr. Abraham.
Dismissal of a case is not, by itself, grounds for sanctions. Rather, sanctions may be imposed for conduct found to be frivolous, that is, such conduct that
“(1) is completely without merit in law and cannot be supported by a reasonable argument for an exten *740 sion, modification or reversal of existing law;
“(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
“(3) it asserts material factual statements that are false.” (22 NYCRR 130-1.1 [c].)
“In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.” (Id.)
While the factors listed above are precatory in determining sanctionable conduct, “what remedy [to impose] is dictated by considerations of fairness and equity.” (Levy v Carol Mgt. Corp., 260 AD2d 27, 34 [1st Dept 1999].) Moreover, “[sanctions are retributive, in that they punish past conduct. They are also goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large. The goals include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics.” (Levy, 260 AD2d at 34 [citation omitted].) The measure of sanctions should be proportionate to the amount sought in the lawsuit, the culpability of the party’s conduct and prejudice to the adversary. (See Vicom v Silver-wood, 188 AD2d 1057 [4th Dept 1992].)
The evidence adduced at the hearing clearly proves that attorney Amos Weinberg and Dr. Jamil Abraham engaged in sanctionable conduct. In the order dismissing the claims, the court found that Mr. Weinberg had failed to prove that he actually represented the named plaintiffs, with the exception of Dr. Abraham and Park Health Center. Defendant successfully raised the issue of representation through the affidavit of Dr. Ceglio and Dr. Stoessel’s testimony, who stated that Mr. Weinberg and Dr. Abraham had no authority to act on their behalf. When the court directed Mr. Weinberg and Dr. Abraham to prove their authority to pursue the claims on behalf of the other named plaintiffs, the evidence presented was grossly insufficient. The parties attempted to prove Dr. Abraham’s authority by submitting letters dating back to 1986 from the individual plaintiffs authorizing Dr. Abraham’s d/b/a’s the right to deposit all checks *741 made payable to the individual plaintiffs. (See defendant’s exhibit L.) Mr. Weinberg presented no offer of proof for Dr. Choi. He attempted to introduce purported authorizations dated August 20, 2002 from Drs. Casson and Schur. However, the authorizations were annexed to an affirmation which attorney Weinberg admitted he did not sign, although it bore his “signature.”[3] As no valid proof of authorization to act on behalf of Drs. Choi, Casson and Schur was presented, the court dismissed their actions.
The court dismissed the actions of Dr. Abraham and permitted the discontinuance by stipulation of the causes of action of Park Health Center, and on behalf of the trustee in bankruptcy, Dr. Koven. It was only after the case was ready for trial and additional court-ordered discovery was conducted that the parties stipulated to a discontinuance by Park Health Center, which never had a cause of action. There was also no evidence that the deceased Dr. Koven ever authorized Mr. Weinberg or Dr. Abraham to act on his behalf. Further, the court found that Dr. Abraham “supplied false and fraudulent information” by way of his employee testifying at the 2000 deposition and by failing to disclose the bankruptcy and death of plaintiff Dr. Koven. The court further found that “Dr. Abraham, as the self-appointed collections agent for the other purported claimants herein, by his contumacious conduct infected the entire case brought to court” and accordingly dismissed his claim as well.
Although difficult to untangle the knotted relationship between Dr. Abraham and attorney Weinberg, the court first addresses the improprieties of the officer of the court and his sordid conduct leading to months of hearings and motions. It is this relationship that lays at the heart of Mr. Weinberg’s sanctionable conduct. He abdicated his responsibility as an officer of the court, and in so doing permitted a number of meritless and baseless actions to go forward, forcing both defendant and the court to expend enormous energy, time and resources. He admitted that he never signed any of the documents that came before the court bearing his signature, including verifications and affirmations. While Dr. Abraham and his employees acted as conduits or procurers of legal matters for Mr. Weinberg, Wein *742 berg abdicated his responsibility by relying solely on Dr. Abraham and by never confirming any of the “facts” or “clients.” He never once spoke with his “clients” to verify the claim or the very existence of either the clients or the claim.
This failure to adequately represent his “clients” is made clear by the evidence that Mr. Weinberg was unaware that his “client” Dr. Koven was deceased. While it is still questionable whether Dr. Koven ever retained Mr. Weinberg independently or through Dr. Abraham, the fact that Dr. Koven’s bankruptcy and subsequent death went undetected by Mr. Weinberg for a significant period of time indicates his dereliction of legal duty. Further, after the initial conference before this court when the truth about the deceased Dr. Koven was “discovered,” Mr. Weinberg nevertheless entered judgment on Dr. Koven’s behalf in another matter.
Had Mr. Weinberg or his employees taken the time to review the documents or interview the purported clients at the inception of the action or at any time during the next five years, the enormous effort of both defendant and the court would not have been expended. Instead, defendant was forced to locate and investigate the “plaintiffs” in this matter and through such labor discovered two plaintiffs had never heard of Mr. Weinberg and did not authorize him to represent them in this matter. None of the underlying documents supported any cause of action on behalf of Park Health and a simple review of the documents furnished would have eliminated that plaintiff without extensive discovery and motion practice undertaken by defendant.
When given the opportunity to come before this court to explain the apparent lack of merit and inconsistencies exposed by defendant, Mr. Weinberg flouted the authority of the court by failing to appear. Instead, Mr. Weinberg only appeared before the court once a contempt order was issued against him. (See Park Health Ctr. v Countrywide Ins. Co., Nov. 6, 2003, Siegal, J., Index No. 26244/97.) Upon appearing in court, Mr. Weinberg failed to present even a scintilla of evidence to prove his authority to act on behalf of the “plaintiffs.” Mr. Weinberg did not produce even one document in admissible form, nor introduce a single affidavit. Further, no attempt at all was made to prove any link between attorney Weinberg and client Dr. Choi. Significantly, the instant action was marked ready for trial. Five years is indeed ample opportunity for counsel to get it right.
As for Mr. Abraham, his conduct in covering up the bankruptcy and death of Dr. Koven is sanctionable. It is uncontro *743 verted that Dr. Abraham knew of the double infirmity of Dr. Koven in 2000 when the bankruptcy trustee held depositions in search of assets. Nevertheless, Dr. Abraham continued to pursue claims on behalf of Dr. Koven, including the instant matter. Further, the evidence indicated that Dr. Abraham cashed checks made payable to Dr. Koven after the deposition. Dr. Abraham, likewise, was fully aware that Park Health Center had no interest in any of the claims and should not have been named as a plaintiff, since it was his employees that submitted the claims to defendant in this matter.
Accordingly, the court awards sanctions against Mr. Weinberg and Dr. Abraham each in the amount of $3,000, along with both equally paying defendant’s reasonable legal fees. Mr. Weinberg shall submit his $3,000 payment to the Lawyers’ Fund for Client Protection. Dr. Abraham shall deposit the same with the clerk of the court for transmittal to the Commissioner of Taxation and Finance. Both parties shall make such payments within 60 days from the date of entiy of this order.

. The matter was initially severed and erroneously discontinued without prejudice. It was then severed with leave of the court for the trustee to represent the estate, and restored to the record pending substitution. By way of affidavit, the trustee in bankruptcy discontinued the action (see affidavit sworn to on Aug. 5, 2002).

. See order dated November 6, 2002, finding Amos Weinberg in contempt. However, the order deferred the court’s determination of punishment until November 15, 2002, at which time Mr. Weinberg testified and was ordered to pay $250.

. Mr. Weinberg testified that he regularly does not sign any of the papers submitted to court, including verifications, affirmations, judgments, etc. The court concluded in its decision dismissing the claims that an affirmation not signed by the affirmant is without force and effect. (Park Health Ctr. v Countrywide Ins. Co., June 30, 2003, Siegal, J., Index No. 26244/97.)