[792 NYS2d 419]

Monika Heilbut, Respondent, v Francis Heilbut, Appellant.

First Department, March 31, 2005

### APPEARANCES OF COUNSEL

*The Dweck Law Firm, LLP*, New York City (*Jack S. Dweck* of counsel), for appellant.

*Bradley B. Davis*, Forest Hills, for appellant.

*The Law Offices of Stephanie R. Cooper, PC*, New York City (*Stephanie R. Cooper* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Having advised the parties to this action that, upon our own initiative, we were considering sanctions against Jack S. Dweck, Esq., and his client, Francis Heilbut, for frivolous conduct in prosecuting defendant's recent appeal (13 AD3d 199 [Dec. 16, 2004]), and having received their submissions on the issue, we now conclude that the appeal was frivolous within the meaning of Rules of the Chief Administrator of the Courts part 130 (22 NYCRR 130-1.1 *et seq.*), and, accordingly, that sanctions are appropriate.

This case, now in its fourteenth year, has been marked by what the courts before which the parties have appeared have

called defendant's "usual tactic of delaying and obfuscating," "tactics . . . designed to continue to obstruct in this case," and "a campaign to continue to obstruct and delay," and has resulted in a finding against defendant of contempt of court orders and a finding that his "conduct in this matter . . . did actually defeat, impair and prejudice the rights and remedies of Mrs. Heilbut." While, with regard to sanctions, we focus here on the frivolous appeal, its frivolous nature must be understood in the context of the underlying protracted frivolous litigation, particularly because this vexatious litigant remains undeterred despite the fact that the courts have clearly advised him of the baseless nature of the litigation (see Levy v Carol Mgt. Corp., 260 AD2d 27, 34-35 [1999]).

On June 1, 2000, 10 years after plaintiff commenced the action, a judgment of divorce was rendered in her favor by Justice Marjory Fields. On October 23, 2000, Justice Sherry Klein Heitler issued a decision and order (the Heitler order) confirming the February 8, 2000 report of the special referee determining equitable distribution.[1] The referee's report provided, inter alia, that "all marital property, including the Apartment, should be split between plaintiff and defendant on a 50-50 basis in view of the length of the marriage and the substantial financial and nonfinancial contributions made by plaintiff," and that plaintiff should receive distributive awards of $37,500 and $41,200, representing half of the value of brokerage accounts then held by defendant. In her order, Justice Heitler observed that, having failed to adduce evidence in support of his motion to disaffirm the report partly as a result of having failed to abide by a stipulation concerning document production, defendant "has persisted in his usual tactic of delaying and obfuscating . . . and expects this court to relieve him of the result of his own actions. This the court declines to do."

Defendant appealed the judgment of divorce, the Heitler order, and four orders issued by Justice Fields: a June 2001 order denying his motion to reopen the equitable distribution hearing, a February 2002 order denying his motion to reargue and renew the denial of the request to reopen the equitable distribution

1. The special referee had initially issued his findings after a hearing held in December 1997, of which defendant had been notified but at which he had not appeared, but after defendant moved to disaffirm the report, the referee reopened the hearing to allow him to testify. The second hearing concluded on February 23, 1999. In his findings of fact and conclusions of law issued on February 8, 2000, the referee reported that defendant had failed to establish that any of his initial findings were incorrect.

hearing, a November 2000 order denying his motion for an award of maintenance and attorneys' fees, and a May 2001 order denying his motion to renew the motion for an award of maintenance and attorneys' fees. In August 2002, this Court affirmed the judgment of divorce and all the above orders, except to the extent of modifying to grant defendant's motion for attorneys' fees, to enable him to obtain representation (297 AD2d 233 [2002]).

On April 3, 2003, the Court of Appeals dismissed defendant's motion, insofar as it sought leave to appeal from so much of our order as affirmed the orders of Supreme Court denying his motion to reopen the equitable distribution hearing, his motion to reargue and renew the denial of his request to reopen the equitable distribution hearing, and his motion to renew the motion for an award of maintenance, on the ground that that portion of our order did not finally determine the action. The Court otherwise denied the motion for leave to appeal, leaving the judgment of divorce and the Heitler order finally determined (99 NY2d 643 [2003]).

On October 24, 2003, plaintiff's attorney served on defendant's attorney an order to show cause why, inter alia, defendant should not be held in contempt of court for his willful failure to comply with the Heitler order.[2] On the return date of the motion, November 5, 2003, defendant appeared before Justice Laura Visitacion-Lewis and claimed that he had not been properly served with process, that he had no attorney to represent him, that he did not have $1,500 to pay a retainer demanded by an attorney he had wanted to hire, that he had retained another attorney for $250 and had been advised by that attorney but had not brought the attorney to the hearing, and that one of his attorneys had advised him to ask for an adjournment.[3] Justice Visitacion-Lewis adjourned the hearing five days, warning that she would permit no further delays in

---

2. In her affirmation submitted on the issue of sanctions, plaintiff's counsel, Stephanie Cooper, said that shortly after she was retained by plaintiff, in July 2003, she contacted defendant's then attorney to discuss both parties' meeting their obligations under the equitable distribution order. She was informed that he no longer represented defendant. Ms. Cooper subsequently wrote directly to defendant, who called and informed her that he was now represented by another attorney. The attorney also called Ms. Cooper, expressed his willingness to discuss the issues and invited her to send all correspondence and court papers to him.

3. Ms. Cooper said in her submission that after she served the order to show cause, defendant's attorney called and informed her that he had been fired by defendant.

this case, which "has already been delayed before it even came before me on this order to show cause."

Defendant appeared with counsel on November 10, 2003. In his affidavit in opposition to the motion, he argued both that the motion must be denied because the payments directed in the Heitler order could be "enforced by the sale" of the apartment and that his failure to comply with that order was not willful because he "never was and is still not presently able to pay the funds alleged to be owed to Plaintiff because Defendant, since prior to the entry of the Heitler Order, simply never had and still does not have sufficient income nor fungible assets to pay more than bare living expenses." He said he was willing "to voluntarily sell" the apartment "as long as the income potential from the said sale is maximized," which required that damage to the apartment be repaired and back maintenance be paid before the sale.[4]

In an order entered December 8, 2003, Justice Visitacion-Lewis ordered defendant, inter alia, to make the apartment available for inspection and listing, to permit uninterrupted access to the apartment for inspection and repairs, and to remove all his belongings and personal property from the apartment within three weeks of the entry of the order, and enjoined him from delaying or obstructing the inspection, listing, uninterrupted access to or repair or sale of the apartment. The court further ordered that if defendant failed or refused to comply with any term of the order capable of being performed within five business days of either his attorney's receipt of the notice of its entry or any deadline set forth in it for the performance of any of his obligations, defendant "shall be immediately deemed to be in contempt hereof and subject to such penalties as this Court shall impose."

On December 29, 2003, the date by which defendant was required to remove his belongings and personal property from the apartment pursuant to the December 8, 2003 order, defendant moved by emergency order to show cause to vacate that order, or for leave to reargue plaintiff's motion, and to stay enforcement of "any and all directives set forth in any decisions, orders, or judgments heretofore granted in this action." Justice William McCooe, sitting as emergency judge, noticed argument before Justice Visitacion-Lewis, but struck defen-

---

4. On November 24, 2003, in a verified amended answer to plaintiff's order to show cause, defendant added the argument that "the Heitler Order regarding marital property is not clear."

dant's request for a stay. Two days later, defendant brought another emergency order to show cause, seeking a stay of the removal of his belongings and personal property from the apartment until the closing date of "an eventual sale" of the apartment. Again, Justice McCooe signed the order noticing argument but denied defendant's request for the stay.

Justice Visitacion-Lewis thereafter held frequent, scheduled telephone conferences with the parties' attorneys to monitor the situation at the apartment. Upon learning that defendant and his attorney had not complied with a January 13 deadline set during a telephone conference the week before, she directed that defendant and counsel for the parties appear in court on January 14, 2004. At the hearing, at which defendant did not appear, Justice Visitacion-Lewis, "mindful that much of what happens today will likely be the subject of an appeal," asked plaintiff's counsel to review the history of the case on the record, and then heard counsel for both parties on what had, and had not, occurred the day before.[5]

Addressing defendant's emergency orders to show cause, Justice Visitacion-Lewis observed that they sought relief that "would challenge Justice Klein-Heitler's order and her directive, that would seek to relitigate issues which 13 years of litigation and appeal had finally, we thought, been put to rest." She also said, "I understand, and it should be fully understood by everyone here who heard the record today, and anyone who reads this record in the future, that this was simply another way to embark on the process, because what Mr. Heilbut is seeking is an order that would flow from these Orders to Show Cause, an order issued by me against which he would then have another round of appeals. It is so patently obvious to me that is what he intends to do, and I refuse to continue to squander this Court's scarce judicial resources and this Court's time on that kind of nonsense."[6]

The court dismissed defendant's motions as without merit in an order entered January 20, 2004, in which it characterized

5. Ms. Cooper told the court that as she was arriving at the apartment building to meet with defendant to gain access to the apartment for herself and for building management and workers, defendant's then counsel informed her that there would be no meeting because his client was elsewhere waiting for a plumber. Defendant's counsel told the court that he had advised his client that he must comply with the court order and that his client had said he was not going to be there.

6. Justice Visitacion-Lewis had said earlier that during a robing room conference, on the record, in connection with plaintiff's order to show cause (on November 5, 2003), defendant told her that "of course, he would have a

them as "the latest in a series of tactics undertaken by defendant former husband, Francis Heilbut, to obstruct and delay the efforts of plaintiff former wife, Monika Heilbut, to implement [the Heitler order]."

During the hearing on January 14, 2004, the court had stated with regard to the holding of contempt against defendant that "the record fully reflects that all of his conduct in this matter did actually defeat, impair, and prejudice the rights and remedies of Mrs. Heilbut, and that it is a particularly egregious form of behavior in light of Mrs. Heilbut's condition, which is that she is currently suffering from a terminal cancer."[7] In the order entered January 22, 2004, in which Justice Visitacion-Lewis held defendant in contempt of her December 8, 2003 order, the court "again [took] note" of that effect of defendant's "undisputed conduct," enjoined defendant from "engaging in any further appeal or instituting any further motion in this or any matter pending before this or any Court without the express permission of this Court," and ordered, inter alia, that he appear for a hearing at 2:15 P.M. on February 4, 2004.[8]

At 10:00 A.M. on February 4, 2004, defendant applied to this Court for an interim stay of the December 8, 2003 order. He

right to appeal anything that this Court did," and that only "since then, and as we have watched what has happened" had she come to understand the significance of that remark.

7. In an affidavit in support of her order to show cause, plaintiff described her former husband as "a selfish and ruthless individual who feels no compunction about making my remaining years, or months, needlessly difficult." She said that defendant wrote to her elderly mother, who he knows has a serious heart condition and to whom he had not spoken in years, informing her mother of the terminal nature of plaintiff's illness, explicitly stating that she had "little time left" and asking her mother to persuade her "for the benefit of her soul to cease her vengeance." Plaintiff said that, because of her mother's own failing health and history of heart attacks, she had told her mother that her tumors were caught in time and the surgery was successful, and that after being "completely blindsided" by defendant, her mother was "utterly distraught" and her health was "visibly in greater jeopardy."

8. Defendant, pro se, filed two notices of appeal on November 24, 2004. The first is from a supplemental judgment of equitable distribution rendered June 11, 2001 by Justice Fields and entered June 22, 2001. This supplemental judgment was unknown to the parties until plaintiff's counsel discovered it in mid-November 2004 and served it on defendant with notice of entry on November 15, 2004. The supplemental judgment ordered, inter alia, that the apartment be sold within 120 days from the date of service of the judgment with notice of entry. The second notices an appeal from an order dated November 23, 2004 issued by Justice Visitacion-Lewis granting plaintiff's motion to stay or enjoin defendant from prosecuting certain actions in Small Claims Court against a real estate broker, Stephanie Cooper, and the superintendent of the building in which the apartment is located.

and plaintiff's counsel, Ms. Cooper, appeared before Justice Sullivan, who heard the parties' arguments and denied the application. This Court denied defendant's motion for a stay on March 11, 2004.

Defendant and counsel for both parties appeared before Justice Visitacion-Lewis in the afternoon of February 4, 2004. After hearing them, the court concluded that defendant "continues to be in absolute and total flagrant violation of the orders of this Court." Given an opportunity to purge his contempt, defendant said that he could not remove his possessions from the apartment because the apartment was the office of a nonprofit corporation, he had no money to pay for moving and storage, and he could not physically move the things out onto the street himself. The court directed defendant

> "not to engage in any conduct which will in any way obstruct the access to that apartment, and the removal of all of its contents.

> "You will not engage in any conduct which is in any way designed to impede, impair or obstruct the sale of this apartment.

> "This apartment sale will go forward. It's over. This particular[ ] bout for you is over. You have had your appeals. You have been to the Court of Appeals, you have been told . . . that the sale must go forward.

> "That's what's going to happen now."

Two weeks later, on February 19, 2004, defendant, pro se, served notices of appeal from Justice Visitacion-Lewis's orders entered January 20, 2004 and January 22, 2004.[9]

On the appeal, defendant argued, inter alia, that the court's finding of contempt against him was improper and unjustified and that the court erred in prohibiting him from filing any appeals without its prior permission. This Court unanimously affirmed the three orders, directed defendant to comply with them forthwith, and directed the trial court to consider the imposition of appropriate sanctions against defendant should he fail to comply with the orders within 10 days of the date of our order (13 AD3d 199 [2004]).

The record establishes that defendant's recent appeal was part of his relentless campaign to prolong this litigation (*see* 22

---

**9.** He had, on December 10, 2003, by counsel, served a notice of appeal from Justice Visitacion-Lewis's order entered December 8, 2003.

NYCRR 130-1.1 [c]), and to delay the inevitable satisfaction of his obligations under the equitable distribution order (*see Matter of Minister, Elders & Deacons of Refm. Prot. Dutch Church of City of N.Y. v 198 Broadway*, 76 NY2d 411, 414 [1990]). Moreover, he persisted in this campaign despite numerous court warnings to cease his delaying tactics (*see Levy v Carol Mgt. Corp.*, 260 AD2d at 34).

Accordingly, we award plaintiff costs in the form of reimbursement by defendant for actual expenses reasonably incurred and reasonable attorney's fees resulting from defendant's frivolous conduct in prosecuting the appeal (*see* 22 NYCRR 130-1.1 [a]), and remand the matter to Supreme Court, New York County, to determine such amount, and impose on defendant additional sanctions of $10,000, which shall be deposited with the Clerk of the Court for transmittal to the Commissioner of Taxation and Finance, for engaging in such frivolous conduct (*id.*). In addition, neither the Clerk of Supreme Court, New York County, nor the Clerk of this Court is to accept further filings from defendant without prior leave of their respective courts.

Viewed against the record of this case, the submissions of defendant's counsel, Mr. Dweck, fail to justify the appeal. Indeed, Mr. Dweck's submissions persuade us that he failed to analyze his client's case in the context of the entire record. Such an analysis would have disclosed that the appeal was improper and should not be prosecuted. When a client asks an attorney to defend or prosecute a claim, a motion or an appeal, or to engage in any other form of representation plainly devoid of merit and undertaken for no reason other than to lead a vindictive campaign to harass, delay or obfuscate, that attorney's obligation is to dissuade the client from continuing that course of action. If the client persists in such an ethically and otherwise improper direction, the attorney should refuse to be so engaged. Accordingly, we impose on Mr. Dweck sanctions of $2,500, payable to the Lawyers' Fund for Client Protection, for frivolous appellate practice (*id.*). The Clerk of Supreme Court, New York County, is directed to enter judgment accordingly.

MAZZARELLI, J.P., MARLOW, ELLERIN, NARDELLI and CATTERSON, JJ., concur.

Plaintiff awarded costs for actual expenses reasonably incurred and reasonable attorney's fees resulting from defendant's frivolous conduct in prosecuting the appeal and the matter remanded to Supreme Court, New York County, to determine

such amount. Additional sanctions of $10,000 imposed on defendant, which amount shall be deposited with the Clerk of the Court for transmittal to the Commissioner of Taxation and Finance, for engaging in such frivolous conduct. In addition, neither the Clerk of Supreme Court, New York County, nor the Clerk of this Court is to accept further filings from defendant without prior leave of their respective courts. Sanctions imposed on Jack S. Dweck in the amount of $2,500, payable to the Lawyers' Fund for Client Protection, for frivolous appellate practice. The Clerk of Supreme Court, New York County, is directed to enter judgment accordingly.