OPINION OF THE COURT
Jeremy S. Weinstein, J.
Findings of Fact
The following constitutes the decision and order of the court following hearings held which addressed the legal status of certain actions filed by Edward Shapiro, EC. and the issue of whether sanctions should be imposed upon Edward Shapiro, EC., Edward Shapiro, Esq. and Jason Moroff, Esq. Edward Shapiro and his associate Jason Moroff appeared at the hearings with counsel, Sarah Diane McShea and Ronald Rubinstein.
At this time the court shall recite a brief history of the facts which preface the court’s decision.
Pursuant to an order of the Honorable Fern Fisher, Administrative Judge of the Civil Court of the City of New York, dated January 27, 2005, all actions filed in the Civil Court of the City of New York commenced by the law firm of Edward Shapiro, EC. and his associate Jason Moroff, Esq. were stayed. The order further referred all of the aforementioned matters to this court for purposes of conducting a status conference and possible sanctions hearing, if determined to be appropriate.
Justice Fisher’s order was based upon receipt and review of a letter dated January 21, 2005 from the Law Offices of Sarah Diane McShea, counsel for Edward Shapiro, Esq., his law firm, Edward Shapiro, P.C. and Jason Moroff, Esq., an associate, which disclosed that papers filed in excess of 11,000 actions pending in the Civil Court of the City of New York containing signatures purporting to be those of Mr. Shapiro and Mr. Moroff, were not, in fact, their signatures. The letter also referenced and enclosed a copy of an administrative order of the Honorable Madeleine Fitzgibbon, Supervising Judge, Suffolk County *371 District Court, dated January 11, 2005 and entitled “In the Matter of Cases filed in Third District Court by Edward Shapiro.” In that order Judge Fitzgibbon refers to MZ Dental, P.C. v Progressive Northeastern Ins. Co. (6 Misc 3d 649 [2004]), decided by Honorable Toni A. Bean, Judge of the District Court, Suffolk County, on December 23, 2004. Judge Bean imposed sanctions upon Mr. Shapiro and Mr. Moroff pursuant to 22 NYCRR 130-1.2, based upon their candid admissions that they failed to personally sign verified complaints and affirmations of mailing in connection with submitted motions in seven pending matters. The court imposed a sanction of $5,000 per case, for a total of $35,000. The court also denied the summary judgment motions and dismissed the complaints pending in those cases, without prejudice.
Judge Fitzgibbon ordered and directed Mr. Shapiro to submit to the court a summons and complaint in each case bearing Mr. Shapiro’s true signature within 20 days.
In her letter to Justice Fisher, Ms. McShea stated that there were significant problems with respect to matters that were handled by Mr. Shapiro and Mr. Moroff, which were pending in various counties throughout the City of New York. These problems were identified and broken down into four categories.
First, the Shapiro firm filed verified complaints which were not actually signed by Mr. Shapiro.
Second, in some of the cases the Shapiro firm made motions for summary judgment, which included affirmations of mailing of the first-party claim, in Mr. Shapiro’s name which were not actually signed by him.
Third, there were notices of trial filed in some of the cases which were not actually signed by Mr. Shapiro.
Fourth, there were affidavits of service of papers on opposing counsel which were actually served but not signed by Mr. Shapiro or the person who had actually served the papers.
Pursuant to the administrative order of Justice Fisher, dated February 3, 2005, a series of conferences were scheduled before this court. The law office of Edward Shapiro, EC. was directed to notify all of the affected defendant insurance carriers of the dates and times of their respective conferences. The conferences were held on March 3rd, 10th, 17th, 24th and 31st. Mr. Shapiro and Mr. Moroff were directed to and did appear at said conferences, with counsel Sarah Diane McShea, and provided to the court affidavits of service and the notifications to each defen *372 dont insurance carrier. The court was made aware, during the course of these conferences, that the actual number of cases subject to the aforementioned order was 27,729.
The court conducted conferences on the aforementioned dates. Several of the insurance carriers were willing to stipulate and waive objections to the signature defects and permit the cases to proceed on the merits. This court “so ordered” such stipulations in 20,665 cases. In 213 cases, there was no appearance.
At the present time, there are approximately 6,851 remaining cases in which insurance carriers have appeared but declined to waive objection to the signature defects. This represents 25% of the remaining cases.
The court issued its own order dated March 31, 2005 directing all interested parties to appear before the court on April 21, 2005 to be heard for the purpose of submitting memoranda of law or requests for specific relief regarding the issue of false or “defective” signatures pending before the court. The Shapiro firm was directed to notify each of the carriers which did not appear at the conferences or did not enter into a stipulation, of the time and date of said hearing by certified mail, return receipt requested. Said notifications were made and copies provided to the court. It was further directed in my order that the failure to appear shall be deemed to be a waiver of any objections to the case proceeding on the merits. The court received numerous memoranda of law from the affected insurance carriers and from Ms. McShea.
On April 21, 2005, the court held a hearing at which time the court heard the testimony of both Mr. Shapiro and Mr. Moroff on the issue of the submission of false signatures. Mr. Shapiro testified regarding the number of times a false signature or signature purporting to be his and was actually not his was submitted to the court. Mr. Shapiro stated that it was fair to say that he did not personally sign the papers on a “significant percentage” of the matters pending.
At a subsequent hearing, held on May 6, 2005, the court asked Mr. Shapiro to define and clarify the use of the word “significant.” Mr. Shapiro stated that probably 95% of his outstanding cases pending in the last half of 2004 did not contain his signature. Mr. Shapiro could not state what proportion of the 27,000 outstanding cases were generated in the last half of 2004. He estimated he processed between 300 to 500 cases per week. The submission of false signatures became, and was part of, his business practice.
*373 At the hearing on April 21, 2005, Mr. Moroff testified that his participation in the submission of false signatures was limited to the submission of motion papers only. He testified that most motions contained his true signature while a smaller percentage contained a false signature or one that was purported to be his.
On May 6th, the court held further hearings regarding the conduct of the Shapiro firm and the imposition of sanctions.
In the course of the sanctions hearing conducted on May 6, 2005, Mr. Shapiro gave detailed testimony as to his legal background and the nature of his practice. Mr. Shapiro is 32 years old, graduated from Boston University School of Law in 1997 and was admitted to practice in the State of New York in 1998. He began his practice in the “no-fault” field as an associate in a firm which specialized exclusively in “no-fault” arbitration. He later opened his own practice which was limited to arbitration. Mr. Shapiro started out practicing as a sole practitioner. His practice grew from a one person operation to a staff of over 30 people including four attorneys and a full-time computer technician. The nature of Mr. Shapiro’s practice also began to change to litigation after arbitration was no longer perceived as a viable alternative. The volume of paperwork associated with litigation became overwhelming. Mr. Shapiro did not have any prior litigation experience. He obtained knowledge on how to litigate by asking other “no-fault” litigation firms for their forms. As his practice expanded he purchased customized and sophisticated computer software programs to enable him to keep up with the volume of cases he was processing. This advanced technology enabled Mr. Shapiro to enter information from files, scan documents into the system and review material contained in those documents. Hard copies of what he viewed on the computer screen were printed and generated sometime later either in the evening or early morning. Mr. Shapiro testified he believed that since he had already reviewed the material over the computer screen he could delegate the signing of his name as long as it was with his authorization. Mr. Shapiro stated that he was unaware and unfamiliar with part 130 of the Rules of the Chief Administrator of the Courts (22 NYCRR). He read these rules for the first time when he saw it written on a summons and complaint document. He stated he read this rule in its entirety at or about the time of the hearing held in Suffolk County before Judge Bean. He immediately ceased this practice and took steps to ensure that all documents containing his name were actually signed by him and all documents that *374 required an attorney’s signature were actually signed by an attorney.
Mr. Moroffs background and experience were very similar to Mr. Shapiro’s. Mr. Moroff also graduated from Boston University School of Law in 1997, and was later admitted to practice in the State of New York. Upon graduation Mr. Moroff worked as an associate as in-house counsel for an insurance company from 1998 through January of 2003 and specialized in “no-fault” defense work in both litigation and arbitration. He became associated with Mr. Shapiro in January of 2003. He was involved exclusively with the motion practice in the Shapiro firm. Mr. Moroff was familiar with part 130 of the Rules of the Chief Administrator but believed that it only required that he sign the certification page. He signed “most” of his papers. He stated he believed that as long as he had reviewed the documents attached to his papers either on the computer screen or in a hard copy it was acceptable to have someone sign his name with his authorization.
Conclusions of Law
CPLR 2101 is the applicable statute which governs the form of legal papers used in civil practice. Pursuant to CPLR 2101 (d) “[e]ach paper served or filed shall be indorsed with the name, address and telephone number of the attorney for the party serving or filing the paper . . . .”
At one time it was sufficient if the attorney’s name was typed or printed. An actual subscription by the attorney was not required. (See, Siegel, NY Prac § 201 [4th ed].) This changed as of March 1, 1998 when an amendment of the sanctions rule, subpart 130-1 of the Rules of the Chief Administrator, became effective, requiring the actual subscription, by an attorney, to all papers served on another party or filed or submitted to the court. This includes pleadings, motions and any other papers that have traditionally contained only the printed or typed name of the lawyer. The name of the attorney must be clearly printed or typed below the signature. Absent good cause shown, the court must strike any unsigned paper if the omission of the signature is not corrected promptly after being called to the attention of the attorney.
Section 130-1.la (b) provides that the attorney’s signature automatically constitutes the attorney’s certification, that to the best of the attorney’s knowledge, information and belief, the contentions contained within the papers are not frivolous.
*375 While CPLR 2101 provides the proper form as to what the papers must contain, it also provides a remedy for defects found in the papers.
Pursuant to CPLR 2101 (f), any defect in the mere form of a paper must be disregarded by the court, if a “substantial” right of a party is not prejudiced by it, and leave to correct the defect must be freely given.
In Pronti v Hogan (278 AD2d 841 [2000]), the Court held, in the absence of prejudice shown to the defendant, the lower court did not err in denying defendant’s motion to strike the summons and complaint based upon a violation of the signature requirement set forth in 22 NYCRR 130-1.la. The Court ruled that the purpose of the rule is furthered when in the court’s discretion it permits the plaintiff leave to file and serve a properly signed pleading.
Similarly, in Maldonado v Galindo Constr. Corp. (2003 NY Slip Op 51118[U] [2003]), the Appellate Term, Second Department, held that a violation of 22 NYCRR 130-1.la does not require that the case be dismissed with prejudice where a signature is omitted and the defendant has failed to show that the pleading at issue was frivolous to merit such a sanction. The court went on to state (at *2):
“[W]hile Rules of the Chief Administrator (22 NYCRR) § 130-1.la mandates that an unsigned paper ‘shall’ be struck ‘if the omission of the signature is not corrected promptly after being called to the attention of the attorney or party,’ there is no indication that the rule is intended to bar the grant of such relief conditionally, as in this case.”
In Maldonado (supra), the court below granted the motion to dismiss unless the plaintiffs counsel signed the complaint in accordance with 22 NYCRR 130-1.la.
In Park Health Ctr. v Countrywide Ins. Co. (1 Misc 3d 906[A], 2003 NY Slip Op 51529[U] [Civ Ct, Queens County 2003]), the court held the dismissal of defectively verified actions was not warranted in the absence of a showing that no-fault complaints were required to be verified and given the defendant’s two-month delay in electing to treat them as nullity.
Applying the applicable law to the facts in this case, the court has come to the following conclusion with respect to the legal status of the remaining cases pending which were filed by Mr. Shapiro and stayed by order of Justice Fern Fisher. In reaching *376 this conclusion and in exercising its discretion, the court has considered numerous factors. Among those factors are (1) the volume of cases affected, (2) the impact borne by the Civil Court of the City of New York, and (3) the prejudice to the parties, if any.
The court finds all papers submitted and filed with respect to the pending matters are not in compliance with 22 NYCRR 130-1.1a (a) in that they lacked the appropriate attorney’s signature. The court will not strike the unsigned papers pursuant to this provision since the court finds that Mr. Shapiro did make an effort to correct the omission of his signature by requesting such relief promptly in a letter addressed to Justice Fisher dated January 21, 2005, soon after the error was called to his attention. His request was denied and Mr. Shapiro was thereafter stayed from taking any further action with respect to the pending cases. The court finds these factors constitute good cause under the rule’s provision and the papers need not be stricken.
The court shall treat the submission of papers, not personally signed, the same as if they were submitted without a signature. The court finds that pursuant to CPLR 2101 (f), the lack of an appropriate signature was a defect with respect to the “form” of papers submitted. The court finds no prejudice affecting a “substantial right” of a party occurred due to the submission of papers not properly signed.
In accordance with this statute, the party upon whom a paper is served shall be deemed to have waived objection to the defect in form unless, within two days after receiving it, it is returned to the party serving it with a statement of particular objections. The court is not aware of any defendant raising an objection on this basis and therefore the court finds the lack thereof to constitute a waiver. Under the facts and particular circumstances of this case, none of the defendants would have known of the “signature defect” had it not been self-reporteti to the court by Mr. Shapiro. \
Some of the defendants strongly argued in'menioranda of law submitted to the court that the court should dismiss the cases. The court however could not find any evidence of prejudice resulting from signature defects particularly since these defects do not affect the merits of the actions.
Under the circumstances, the court finds that dismissal of the underlying actions would be unduly harsh and would punish plaintiffs with meritorious actions.
*377 In accordance with CPLR 2101 (f), leave to correct must be freely given. The court shall grant Mr. Shapiro the leave to correct all papers submitted which are affected by Justice Fisher’s order.
The court is, however, mindful and aware of the potential burden that would be placed upon the court and its personnel, the defendants and the plaintiffs, if replacement documents were directed to be submitted to the court as was done in the Suffolk County matter. In the instant matter it is estimated that there are 6,851 actions pending in the various counties throughout the City of New York. These files would have to be requisitioned, opened and removed from the various parts in order to have replacement documents inserted.
In the alternative, the court hereby directs Mr. Shapiro and Mr. Moroff to submit, in each case affected by Justice Fisher’s order, a sworn statement, ratifying the signatures on each document submitted by the firm within 30 days of the service of the court’s decision and order. Such statements are to be also served on all defendants’ counsel within 30 days of service of the court’s decision and order.
The court need not address pending motions for summary judgment, which included affirmations of mailing not actually signed by Mr. Moroff, affected by Justice Fisher’s order, based upon the representation by Mr. Moroff that all summary judgment motions which were pending prior to the date of Honorable Fern Fisher’s stay are being withdrawn.
Upon proper compliance with the court order, the stay imposed by Justice Fisher’s order will be lifted and the statement ratifying the signatures will be deemed to be effective nunc pro tune.
Sanctions
Pursuant to 22 NYCRR 130-1.1, the court, in its discretion, may impose financial sanctions upon any attorney in a civil action or proceeding who engages in frivolous conduct. The court may impose such financial sanctions against the attorney personally or upon a partnership, firm or corporation with which the attorney is associated.
In accordance with 22 NYCRR 130-1.1 (c),
“conduct is frivolous if:
“(1) it is completely without merit in law and cannot be supported by a reasonable argument for an *378 extension, modification or reversal of existing law;
“(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
“(3) it asserts material factual statements that are false . . .
“In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.”
In Levy v Carol Mgt. Corp. (260 AD2d 27 [1st Dept 1999]), the Appellate Division held that:
“Sanctions are retributive, in that they punish past conduct. They are also goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the Bar at large. The goals include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics (cf., Matter of Kernisan v Taylor, 171 AD2d 869).”
The court finds that based upon the testimony heard at the hearing that Edward Shapiro, Esq. and Jason Moroff, Esq. engaged in frivolous conduct.
Indeed, in her memorandum of law submitted to the court, their counsel Ms. McShea, admits that “the firm agrees that it did not comply with the signing requirement of § 130-1.la and that its conduct is properly before the court. The firm respectfully notes that its pleadings were otherwise non-frivolous as defined by the Rule.”
Mr. Shapiro admitted to not having signed 95% of the documents contained within the 27,729 cases pending before the court bearing his signature. Mr. Moroff admitted to not signing a significant proportion of the affidavits and affirmations of mailing in connection with his submission of summary judgment motions filed in this court. Mr. Moroff testified that he was familiar with 22 NYCRR part 130 “only to the extent that you had to sign the certification page. I had not read the rule.”
The court finds that Mr. Shapiro and Mr. Moroff abdicated their responsibility as attorneys and officers of this court. The *379 court finds their claimed lack of knowledge no excuse. In their desire to satisfy the demands of an overwhelming workload they took shortcuts. In their efforts to satisfy the demands of their clients they improperly delegated the authority to sign papers to others.
The court finds that given the volume of cases processed by this small firm, it became part of the firm’s regular practice to have someone else sign the attorney’s name, without regard to whether the statements contained within the papers were accurate and without it having been reviewed by an attorney.
22 NYCRR 130-1.la (b) states that “[b]y signing a paper, an attorney or party certifies that, to the best of that person’s knowledge, information and belief, . . . the presentation of the paper or the contentions therein are not frivolous . . . .” According to Siegel (NY Prac § 414A, at 710 [4th ed]),
“[t]he signing itself constitutes the certification, and a false certification of course grounds a sanction. That’s why the signing requirement is contained in the sanctions rule itself: to stress the individual responsibility of the lawyer to make a reasonable effort to ascertain the truth or accuracy of the content of the paper signed.”
The court finds both Mr. Shapiro and Mr. Moroff shirked their individual responsibility. Mr. Moroff indeed even indicated in his testimony that he was aware that he had to personally sign the certification page. By failing to personally sign the papers submitted before the court, both Mr. Shapiro and Mr. Moroff engaged in conduct which was frivolous. The court finds this to be conduct which is frivolous under part 130. Mr. Shapiro and Mr. Moroff were asserting material factual statements to the court which were not personally signed by them. In their haste to process the volumes of paperwork, the court finds that they failed to make a reasonable effort to ascertain the truth or accuracy of the content of the papers being submitted to the court.
In 2000, there were approximately 212,000 new filings in the Civil Court of the City of New York. That number has increased to approximately 400,000 in 2004. This increase is due in large measure to no-fault litigation. The court is mindful of the myriad of problems that such a significant increase in volume has engendered, most especially the burden placed upon the court. This increase has further given rise to “volume practices” and, not surprisingly, the shortcuts taken with newer technologies. The court finds this conduct cannot be condoned and must be punished.
*380 In determining the appropriate financial sanction to be imposed the court has considered an amount which would deter future frivolous conduct not only by these parties but also by the bar at large. The court has also considered the amount of effort and time which the court has expended resolving the issues in this case, as well as the tremendous burden it has imposed on the court’s resources and staff. The court is also cognizant of the sanctions of $35,000 previously imposed by Judge Bean in Suffolk County.
Among mitigating factors considered are the fact that the conduct in question was self-reported to Justice Fisher and did not continue after that point in time. The plaintiffs have been extremely candid and cooperative with the court and, to the extent they were permitted, agreed to withdraw all pending motions. The court finds their conduct was more of a result of an overwhelming workload, inexperience and not by any improper intent to deceive the court.
The court also has considered the fact that Mr. Shapiro and Mr. Moroff have engaged the services of David Paul Horowitz, Esq. as a law practice mentor for the firm. Mr. Horowitz has written and lectured extensively on civil practice and procedure. He has reviewed the firm’s practices and procedures and is assisting them in developing and implementing standards and practices within the firm in order to insure compliance with the rules of practice in the courts in which the firm appears. He has also been asked to develop a series of in-house CLE programs for the firm’s attorneys tailored to the firm’s area of practice to improve the manner in which the practice is conducted and to insure adequate safeguards exist to avoid future similar problems.
Pursuant to 22 NYCRR 130-1.2, this court has the authority to impose sanctions not exceeding $10,000 for any single occurrence of frivolous conduct.
In the court’s determination, the filing of each paper containing a false signature constitutes a single occurrence of frivolous conduct. Given the thousands of cases which exist containing false signatures, the court will view the actions of Mr. Shapiro, Mr. Moroff and Edward Shapiro, PC. in their totality. The court has determined that it will base its imposition of sanctions in this case on the four individual categories of false signatures submitted to the court which have been outlined previously and conceded by Mr. Shapiro and Mr. Moroff.
*381 The court hereby imposes a total fine in the amount of $40,000 ($10,000 for each category) to be assessed against Edward Shapiro, EC.