(March 24, 2016)

■ LAUREN APPEL GOTTLIEB, Respondent, v MICHAEL GOTTLIEB, Appellant. HESHY GOTTLIEB et al., Nonparty Appellants. [28 NYS3d 37]—

Order, Supreme Court, New York County (Ellen Gesmer, J.), entered December 23, 2013, which, to the extent appealed from as limited by the briefs, granted plaintiff wife's motion for sanctions against defendant husband and granted plaintiff's motion to hold defendant's parents in contempt of court, modified, on the law and the facts, to deny plaintiff's motion insofar as she sought to sanction defendant for his delay in paying his share of the neutral forensic evaluator's fees, to vacate the sanctions imposed on defendant for the delay ($6,847.50 and $79,530), and to vacate the fines imposed on defendant's parents for their contempt of court in the amounts of $156,704.94 and $28,135.35, representing the legal fees plaintiff incurred in conducting the visitation trial and preparing an addendum to the posttrial memorandum, and otherwise affirmed, without costs. Appeal from judgment of divorce, same court and Justice, entered May 12, 2014, dismissed, without costs, as abandoned.

This case involves tragic circumstances that disrupted and eventually destroyed the parties' marriage. The parties, who were married in 2005, have one child, a daughter born in 2007. In 2008, defendant, then age 28, suffered a stroke from an undetected brain aneurysm. He was in a coma for several weeks and underwent four brain surgeries. He emerged partially paralyzed and uses a wheelchair. Although he resides in a nursing home, and suffers from some vision, memory and speech impairments, he has never claimed in this action that he is incapable of making independent decisions. In fact, in

connection with a prior custody action, the Family Court considered but declined to appoint a guardian ad litem for defendant.*

The primary dispute in this divorce proceeding is visitation. The parties previously stipulated that plaintiff would have primary custody of the child, and defendant withdrew his special proceeding to enjoin plaintiff from obtaining a religious divorce before a Beth Din. We hold that the trial court abused its discretion in sanctioning defendant for failing to comply with its June 12, 2012 order directing him to pay his share of the neutral custody forensic evaluator's fees. We hold, however, that by filing and continuing a special proceeding to enjoin proceedings before the Beth Din of America, defendant engaged in frivolous litigation. We also deem defendant's notice of appeal to include his parents because they have "a united and inseverable interest in the judgment's subject matter, which itself permits no inconsistent application among the parties" (*Hecht v City of New York*, 60 NY2d 57, 62 [1983]). Moreover, on rare occasions, in granting relief to an appealing party, the nonappealing party may also benefit (*see Cover v Cohen*, 61 NY2d 261, 277-278 [1984]), particularly where, as here, the issues are hopelessly entangled (*see Citnalta Constr. Corp. v Caristo Assoc. Elec. Contrs.*, 244 AD2d 252, 254 [1st Dept 1997]). Upon doing so and in consideration of the merits, we affirm the trial court's finding of contempt in connection with defendant's parents' failure to comply with trial subpoenas and court orders directing them to produce documents for trial. The fine appropriately included an award of legal fees incurred by plaintiff in making a contempt motion. However, we vacate the part of the fine representing legal fees incurred for preparation of a posttrial memorandum as well as for the visitation trial itself.

With respect to sanctions attributable to defendant's failure to pay his share of the forensic evaluator's fees in time for the originally scheduled trial, defendant claimed he could not afford the expense. The trial court rejected the proffered excuse because defendant's parents were paying most of his other litigation fees. Defendant's parents, however, were under no legal or contractual obligation to pay the forensic evaluator's

---

* Defendant filed a custody petition in the Bronx Family Court in October 2009. The Special Referee appointed Pierre Javier, an attorney from the Mental Hygiene Law article 81 panel, to assess the husband's mental capacity and ability to assist his counsel in his representation and make a recommendation whether a guardian ad litem should be appointed. Attorney Javier recommended that no such appointment was needed.

fees. Therefore, it is immaterial whether or not they could have done so. The trial court made no finding that defendant's expressed inability to individually pay the forensic evaluator's fees was untrue. The parties initially agreed that the forensic evaluator's fees would be paid from monies in escrow resulting from the sale of the former marital residence. There is no evidence that defendant, who is disabled and unable to work, had other monies available to him from which to pay the forensic evaluator's trial retainer and other fees. When the court notified both sides that the trial would not take place until the forensic evaluator's fees were paid in full, defendant offered to have these fees deducted from his remaining share of the escrowed funds. That option was rejected by the court and the trial was adjourned. Ultimately, the remaining amount of defendant's share of the forensic evaluator's fees and the trial retainer were paid from the proceeds of the sale of the marital home, as he had initially proposed months earlier. Defendant's conduct does not meet the definition of frivolous conduct (22 NYCRR 130-1.1 [c]), and to the extent the sanctions awarded by the trial court were attributable to the late payment of the forensic evaluator's fees, including the fees imposed for plaintiff's second preparation for a visitation trial, they should be vacated.

Defendant's commencement of a special proceeding against plaintiff and the Beth Din for a permanent stay of an arbitration hearing on the religious divorce was frivolous within the meaning of the part 130 rules because the action had no legal or factual merit (22 NYCRR 130-1.1 [c]). Plaintiff was proceeding before the Beth Din for a religious divorce based upon a binding arbitration agreement (BAA) she claimed had been signed by the parties prior to their marriage and years before defendant's stroke. Instead of examining the BAA when he was notified by the Beth Din of the hearing, defendant immediately claimed it was a forgery, largely based on his recollection that he was not in Jamaica Estates (Queens County) on November 29, 2004, the date on which the BAA was executed. Defendant seized upon certain scrivener's errors in the BAA to bolster his forgery claim, ignoring sworn attestations by two witnesses who saw him sign the BAA, the notarization, and his ability to identify the physical signature as his own, even though he had no specific memory of its execution. It was not until one year later, at his deposition, that defendant finally acknowledged the signature was his, essentially conceding that his claim of forgery had absolutely no merit. Even then defendant delayed withdrawing his petition, waiting until the very day of the hearing to do so. By failing to fully investigate whether this

claim had any legal or factual basis, defendant forced plaintiff to expend unnecessary legal fees in opposing the meritless petition. This required plaintiff's counsel to conduct discovery, including defendant's deposition, and also prepare for an unnecessary trial, that never went forward.

Even if, as defendant now claims, his parents actually manipulated him into bringing the summary proceeding and were the driving force behind it, ultimately it was defendant's decision to pursue those baseless claims for over a year (*see Levy v Carol Mgt. Corp.*, 260 AD2d 27 [1st Dept 1999]). Notwithstanding that defendant has serious health and cognitive issues, no claim was made by defendant, his attorneys, or even his parents that he was in need of a guardian ad litem, or any other substitute decision maker, because he was unable to defend or prosecute his claims (CPLR 1201 *et seq.*). In fact, as noted, in the prior custody proceeding, the court found he was not in need of a guardian ad litem. There is no indication that defendant was incapable of making decisions regarding the proceedings or unaware of its implications. Consequently, the trial court correctly held defendant responsible for his own frivolous conduct.

The trial court properly awarded plaintiff legal fees incurred to defend the special proceeding as the appropriate sanction amount (22 NYCRR 130-1.1 [a]). No hearing was required to determine the amount of the fees, because the parties stipulated in writing that the issue of counsel fees could be decided upon written submissions.

With respect to the trial court's holding defendant's parents in contempt, we uphold the trial court's finding that defendant's parents were in contempt of trial subpoenas and court orders when they failed to provide documents at trial. Despite serving each parent with subpoenas over four months in advance of trial, requiring them to testify and produce at trial records and documents necessary for plaintiff's case, defendant's parents appeared for trial without many of the records and documents demanded, including communications between the parents and defendant's lawyers. Neither defendant nor his parents brought a written motion to quash those subpoenas. It was not until trial that defendant's parents asserted, for the first time, a blunderbuss attorney-client privilege and made an oral application to quash the subpoenas. In asserting the privilege, no privilege log itemizing documents being withheld was produced. Nor were the withheld documents offered for in camera inspection. Although the trial court rejected the oral application as untimely, it nevertheless considered the privilege

arguments based on the merits. The trial court decided that the privilege did not belong to defendant's parents (who were not clients of defendant's counsel) and that defendant had waived the privilege by including his parents in his communications with counsel. The trial court then repeatedly ordered defendant's parents to comply with the subpoenas, but they refused, forcing plaintiff to bring a motion to hold them in contempt. That motion was deferred for decision after trial. After the visitation trial was complete, defendant's parents finally provided the withheld documents, thereby purging their contempt. As a result of the belated production, plaintiff incurred additional legal fees in connection with bringing a contempt motion.

The record supports the trial court's determination that the parents were actually aware of, and disobeyed, a clear and unequivocal court directive, thereby prejudicing plaintiff's rights, justifying the finding of civil contempt (see Judiciary Law § 753 [A] [3]; McCain v Dinkins, 84 NY2d 216, 226 [1994]; Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]). The motion to quash was properly denied by the court as untimely. But even if, as defendant now argues, the orders underlying the contempt were not correct, defendant's parents were still obligated to comply. An order that is jurisdictionally valid and not stayed during the relevant time can form the basis for contempt, even if the order is erroneously made (see New York City Coalition to End Lead Poisoning v Giuliani, 248 AD2d 120, 121 [1st Dept 1998]; Seril v Belnord Tenants Assn., 139 AD2d 401, 401 [1st Dept 1988]). Clearly noncompliance prejudiced plaintiff because she incurred unnecessary legal fees in having to bring a contempt motion.

Legal fees that constitute actual loss or injury as a result of a contempt are routinely awarded as part of the fine (Judiciary Law § 773; see Bell v White, 112 AD3d 1104 [3d Dept 2013], lv dismissed 23 NY3d 984 [2014]). These may include the legal fees incurred in bringing the contempt motion (see Glanzman v Fischman, 143 AD2d 880, 881 [2d Dept 1988], lv dismissed 74 NY2d 792 [1989]).

The trial court properly included plaintiff's legal fees for bringing a contempt motion as part of the fine. The trial court, however, improperly included as part of the contempt fine both the legal fees incurred to prepare the posttrial memorandum and those incurred in connection with the trial itself. There was no basis for the court to conclude that such legal fees constituted an actual loss or injury related to the contempt as a means of compensating plaintiff, rather than punishing de-

fendant's parents, for the wrong (see *State of New York v Unique Ideas*, 44 NY2d 345, 349 [1978]). The posttrial memorandum addressed the significance of the documents after they were actually produced. Had defendant's parents timely produced the documents, legal time taken to review and argue the significance of the documents in the context of the parties' dispute would still have been necessary.

With respect to including the legal fees associated with the visitation trial as part of the contempt fine, the trial court based its decision on a belatedly produced email dated December 27, 2012 from defendant's parents to defendant's attorney. The email indicated that the defendant had told his parents he did not want any visitation with his daughter. The trial court concluded that if the email had been produced sooner "there would have been no visitation trial."

The broad-based conclusion that no visitation trial would have been necessary, or as the dissent hypothesizes, sharply curtailed by the production of this email and other correspondence, is simply speculation. In fact, some of the important issues involved how to best rehabilitate defendant's strained relationship with his young daughter. The natural right to visitation is a joint right of the noncustodial parent and the child (*Resnick v Zoldan*, 134 AD2d 246, 247 [2d Dept 1987]). Consequently, "[i]t is presumed that parental visitation is in the best interest of the child, absent proof that such visitation would be harmful" (*Matter of Wise v Del Toro*, 122 AD2d 714, 714 [1st Dept 1986]). The primary dispute between the parties was the extent to which the parties' young daughter would have access to her father and under what circumstances, given defendant's disabilities and his living arrangement. It was never contemplated, even by plaintiff, that their daughter would cease to have contact with her father. Defendant steadfastly maintained throughout these proceedings that he wanted access to his daughter, and although the forensic evaluator testified that there should be reduction in the frequency and duration of the child's visits with her father, she did not recommend wholesale termination of visits. Therefore, even if defendant's parents had timely produced these documents, access and supervised visits would still have been an issue. The fact that defendant, who was competent, actually proceeded with a trial is irrefutable proof that a trial was necessary. Had defendant not wanted visitation with his daughter, he could have simply withdrawn his request for access and the fact that he did not do so is of greater significance than the email and other documents his parents did not turn over. Given these

circumstances and this extremely complicated family dynamic, there was no basis for the trial court to have broadly concluded that no visitation trial was necessary based upon the production of this lone email, or any other documents defendant's parents failed to provide. Concur—Friedman, J.P., Saxe, Feinman and Gische, JJ.

Manzanet-Daniels, J., dissents in part in a memorandum as follows: I agree with the majority that the court did not abuse its discretion in awarding sanctions to the wife based on the husband's frivolous conduct in bringing a special proceeding to stay an arbitration to which he had admittedly consented. I would also uphold the award of sanctions based on the husband's failure to pay his share of the forensic evaluator's fee.

I disagree with the majority to the extent it purports to vacate in part the award of sanctions imposed on the paternal grandparents. Because the paternal grandparents failed to file a notice of appeal within the prescribed time, their appeal of the contempt sanction is not properly before this Court. There is no basis for finding that the parties had a "united and inseverable interest in the judgment's subject matter" so as to give this Court authority to vacate the award (*Hecht v City of New York*, 60 NY2d 57, 62 [1983]). A civil contempt sanction is designed to indemnify an aggrieved party for his or her actual losses based on the contemnor's misconduct. The sanction in any event was warranted based upon the grandparents' admitted defiance of subpoenas and withholding of information which might have drastically curtailed, if not averted, an extended trial on the husband's visitation schedule. There was more than ample support for the trial court's finding that "the [p]aternal [g]randparents orchestrated the litigation between the [f]ather and the [m]other from the beginning, with the purpose of intimidating the [m]other," and "willfully interfered with [the child's] development of a positive and loving relationship with her [f]ather." I would accordingly affirm the order appealed from.

## Background

The parties were married on January 2, 2005. They have one daughter, born on April 20, 2007.

The husband suffered a brain aneurysm on October 5, 2008, and thereafter remained in a coma for several weeks. The wife lived in a rented room at Columbia Presbyterian so that she might tend to the husband while he remained hospitalized. During this time, the wife's family assumed the responsibility of caring for the daughter.

On November 5, 2008, the wife signed the husband out of the hospital and had him admitted to a rehabilitation hospital for treatment of his traumatic brain injury. The wife visited the husband daily, accompanied him to therapy, and learned how to care for him. On alternate weekends, she stayed at a dorm room at the rehabilitation facility, and the wife's family cared for the daughter. On the weekends she did not stay there, she brought the daughter to see the husband.

On February 18, 2009, the wife had the husband transferred to a facility in Queens. The wife moved with the child to her parents' home in Queens in order to be closer to the husband. Although the daughter was frequently hesitant to be near her father, the wife nonetheless attempted to make her comfortable, sitting close to the husband with the child on her lap during visits.

It was during this time that the wife began having disagreements with the husband's family about his care and treatment. When the husband was permitted to leave the facility on weekends, starting in April 2009, he would spend alternate weekends with the wife and child in Queens, and with his parents in New Jersey.

The wife began looking for a home near the rehabilitation facility that she could modify to accommodate the husband's physical needs. Tensions between the wife and the grandparents increased. The husband yelled at the wife and accused her of not acting in his best interests. He informed her that he wanted his mother, and not the wife, to be in charge of decision-making regarding his care. On June 24, 2009, the wife learned from a social worker that the husband's parents were planning on moving him to another facility without her knowledge.

The paternal grandparents had the husband transferred to a facility near their home in Edison, New Jersey, without informing the wife. For two months, the paternal grandparents refused to inform the wife where they had taken the husband, and the husband made no effort to contact the daughter.

The Bronx County Divorce and Custody Action

In October, 2009, the wife commenced a proceeding in Family Court in the Bronx seeking legal and residential custody of the daughter.

Referee Guarino appointed Pierre Janvier, Esq., a mental hygiene attorney and member of the Mental Hygiene Law article 81 panel, to assess the husband's mental capacity. Mr. Janvier deemed the husband "fully capable of understanding and assisting his lawyer in a Family Court proceeding," stating

as follows: "[The husband's] memory after his accident is not the same as it was before . . . but anything prior to the accident he remembers very well. We spoke about his relationship with his wife and the type of relationship that they had and how close it was prior to the accident and he talked about how close his relationship is with his child. Overall—and he's an educated man. And overall, we were able to speak at length about many things. And he resembles nothing like the persons I have had to ask for guardians for. And I can assure—I'm sure that he's able to communicate with his lawyer and tell her what he wants. In fact, he understood that he cannot possibly be the caretaker of the child, so that it's not a custody issue for him. We spoke in effect that he understands as far as his part of the case, it's really a visitation issue, so he fully understood that. . . . And [the husband] is doing extremely well. . . . He's like a model patient. And my sense is his doctors are amazed of his recovery. He talks about going back to the hospital where he was cared for and how shocked everyone is to see how much of a recovery that he's had. And given all of that, I believe that he's fully capable of understanding and assisting his lawyer in a Family Court proceeding."

Mr. Janvier's assessment of the husband's mental state was never challenged. On April 21, 2010, the Bronx Family Court issued an order on consent awarding the wife sole custody, with visitation to the husband "as the parents agree."

The Special Proceeding

The husband, through his attorneys, made clear to the wife that he would not give her a Jewish divorce, or "get," unless the wife agreed to the visitation schedule he was demanding. The wife commenced the process of enforcing her right to a get under the arbitration agreement the parties had signed through the Beth Din of America prior to their marriage.

On March 16, 2010, the husband commenced a special proceeding in New York County seeking to stay the arbitration on the ground that he "did not sign the alleged [a]rbitration [a]greement," that he "may not be legally competent to participate in such a hearing," and that he was "not physically able to participate in such a hearing at this time."

The wife filed a notice of cross motion to compel arbitration, and for sanctions against the husband for counsel fees incurred in defending the proceeding. She attached affirmations from three witnesses who affirmed that they had personally observed the husband sign the arbitration agreement.

At the husband's deposition, on October 11, 2011, he responded in the affirmative to the question, "Does that appear

to be your signature [on the arbitration agreement]?" Nonetheless, he did not withdraw his petition to stay the arbitration for weeks, well aware that the wife's counsel was preparing for trial in the interim, incurring further unnecessary attorneys' fees. The husband did not execute a stipulation withdrawing the petition until November 7, 2011, just as trial was to commence on the matrimonial action.

The matrimonial action was settled by stipulation dated March 5, 2012. The issue of sanctions was reserved for submission and determination at the conclusion of the case. The wife incurred approximately $68,587.50 in counsel fees in connection with the special proceeding.

The Access Trial

On April 15, 2011, the court appointed Dr. April Kuchuk to conduct a forensic evaluation of the parties and the child. Her report, which was largely favorable to the wife, confirmed that the wife was willing to facilitate an appropriate relationship between the husband and the daughter and had consistently demonstrated her ability to act in the child's best interests.

The husband failed to pay his share of the forensic evaluator's fee or trial retainer, resulting in a postponement of the visitation trial from June 2012 to dates in October and November 2012. The court's June 12, 2012 order expressly noted that the "trial w[ill] be adjourned in light of the [h]usband's failure to pay Dr. Kuchuk his share of her past due fees and her retainer," noting "[i]t is also critical that the [h]usband pay Dr. Kuckuk far enough in advance of the scheduled trial dates that Dr. Kuchuk can arrange her schedule . . . and that the parties can prepare for trial in an orderly way." The court directed the husband to pay the evaluator $6,562.50 on or before October 1, 2012.

The husband claimed not to be able to pay the fee even though the paternal grandparents had paid the husband's attorneys' fees throughout the litigation. The court eventually permitted the husband to pay his share of Dr. Kuchuk's fees from his share of the escrowed proceeds from the sale of the former marital residence rather than to delay the trial further.

Trial over an appropriate visitation schedule did not commence until December 10, 2012. At trial, the husband failed to undermine Dr. Kuchuk's findings or to present any expert testimony challenging her recommendations. The wife incurred approximately $79,530 in counsel fees attributable to the delay of the access schedule trial, and approximately $156,704.94 for the conduct of the trial.

### The Trial Subpoenas

On or about August 23, 2012, the wife served subpoenas on the paternal grandparents seeking the production of specific documentation relevant to the custody issues in the matrimonial matter, including, inter alia, all communications between the paternal grandparents and the husband's law firm.

The paternal grandparents produced the retainer agreement and billing records but no further documents. Neither the paternal grandparents nor the husband made a motion to quash the subpoenas until January 8, 2013, the fourth day of the trial, over 4½ months after the subpoenas had been served. The court denied the oral application and directed the paternal grandparents to produce the documents. The paternal grandparents still failed to comply with the subpoenas, even though they acknowledged having responsive documents in their possession. The visitation trial concluded on January 9, 2013.

The wife filed a posttrial motion seeking a finding of contempt against the paternal grandparents and sanctions in the form of counsel fees. At oral argument, the court granted the paternal grandparents one additional week to cure their default. Although they produced some additional documents, they failed to produce the remaining documents until April 2013.

On December 16, 2013, the court issued an order denying the application to quash the subpoenas as untimely.

The wife incurred approximately $28,675 in counsel fees relating to the contempt motion, and an additional $28,135.35 for addendum to the posttrial memorandum necessitated by the grandparents' failure to comply with the subpoenas.

### Discussion

### Award of Sanctions Against the Husband

The award of sanctions against the husband was predicated on two specific instances of frivolous conduct (*see* 22 NYCRR 130-1.1): the commencement of the special proceeding pursuant to CPLR article 75 to stay the arbitration proceeding before the Beth Din of America, and the failure to timely pay the fee for the forensic evaluator, resulting in delay of the visitation trial. Because the court acted within its discretion in imposing sanctions based on the specified instances of misconduct, I would not disturb the award.

The husband sought to stay the arbitration on the grounds that he (1) did not sign the binding arbitration agreement (BAA); (2) was not legally competent to participant in any hearing required by the BAA; (3) was unable to physically participate in the hearing. All of these ground were without evidentiary foundation.

On April 21, 2010, the husband was found to be "fully capable of understanding and assisting his lawyer in the Family Court proceeding." This assessment was never challenged.

On October 11, 2011, the husband's deposition was taken in connection with the matrimonial proceedings. The husband was able to travel from a care facility in South Plainfield, New Jersey, to the offices of the wife's attorneys in New York City, and was able to give testimony for over two hours, belying the claim that he was physically unable to travel or to attend the arbitration hearing. The husband also testified that he traveled to his parents' summer house upstate on the weekends and for holidays.

The husband acknowledged under oath that his signature appeared on the BAA at issue in the proceeding. After being directed to prepare for trial, the husband submitted a letter to the court stating that he intended to withdraw his petition. However, he did not execute a stipulation officially withdrawing the petition until the actual day of trial. His delays caused the wife to prepare for trial and to incur legal fees, anticipating that the husband might fail to withdraw the petition. The court properly found the husband's conduct to be sanctionable based on the delays occasioned by the failure to withdraw the petition from April 2010, when the husband was deemed to be competent, until the day of trial. I accordingly agree with the majority's decision to uphold the award of $68,587.50 in counsel fees incurred by the mother in connection with the special proceeding.*

I would find, however, that the court was also within its discretion in awarding sanctions based on the husband's failure to comply with the court order to pay his share of the forensic expert's fee. The failure to pay the expert had the indisputable effect of delaying the trial since the trial could not go forward without the forensic expert and the forensic expert would have to be paid in order to testify. The court properly determined that the husband's purported inability to pay $6,562.50 to comply with the court order was not credible and was undertaken to "delay or prolong the resolution of the litigation." The fine, like the legal fees associated with the special proceeding, was ordered to be paid from the husband's share of the escrowed proceeds from the sale of the parties' home.

---

* A member of the majority advanced a position on sanctions in a prior case that appears to be inconsistent with the position the majority takes here (see Matter of Kover, 134 AD3d 64, 94-131 [1st Dept 2015, Saxe, J., dissenting]).

Contempt Finding Against the Paternal Grandparents

The grandparents admittedly failed to file a notice of appeal from the order finding them in contempt. An appellate court cannot grant relief to a nonappealing party unless doing so is necessary to afford complete relief to the appealing party (*see Hecht v City of New York*, 60 NY2d at 62). The majority's invocation of *Hecht* notwithstanding, they cannot and do not even purport to justify bringing this case within the narrow exception set forth in *Hecht*. "[A]n appellate court's reversal or modification of a judgment as to an appealing party will not inure to the benefit of a nonappealing coparty, unless the judgment was rendered against parties having a united and inseverable interest in the judgment's subject matter, which itself permits no inconsistent application among the parties" (*id.* at 61-62 [citation omitted]). That is manifestly not the case here. Stating that the parties have "a united and inseverable interest in the judgment's subject matter," as the majority does, with no explication or justification for how it arrives at this extraordinary conclusion, does not transform the grandparents into appealing parties when they failed to file a notice of appeal. Further, the position taken by the majority on the merits, i.e., upholding some sanctions against the husband, noting that he was found to be "fully capable of understanding and assisting his lawyer in a Family Court proceeding," is inconsistent with the argument that the grandparents functioned as the husband's de facto guardian so as to be considered united in interest with him. The majority cannot have it both ways.

The contempt sanction is predicated upon the conduct of the grandparents in defying nonparty subpoenas, and was levied against them alone, not jointly against them and the husband. Moreover, the husband's lawyers, in declining to accept service of subpoenas directed to the grandparents, made clear that they represented the husband only and not the grandparents. There is simply no basis for finding that they were united in interest so as to dispense with the fundamental jurisdictional requisite of filing a notice of appeal.

The court in any event properly found the paternal grandparents in contempt for failing to comply with a judicial subpoena and court order directing them to produce documents in their possession (*see* Judiciary Law § 753 [A] [5]). The grandparents admitted that notwithstanding actual notice of the court's order, they failed to produce documents in defiance of the subpoenas and the court's January 8, 2013 order. The documents, including emails in which they alluded to the fact that the father did not want visitation with the child, were highly relevant to the issues before the court.

Although the production of the email or other documents might not have averted a trial altogether, there is no question that the wife was prejudiced by their withholding. By seeking documents relating to communications between the paternal grandparents and the husband's counsel, the wife was attempting to establish a pattern of manipulation that acted to the child's detriment and thereby rendered them inappropriate persons to supervise visits between the husband and his daughter. The documents helped to corroborate the wife's theory of the case. The failure to produce the documents for trial defeated, impaired, impeded and prejudiced the rights or remedies of the wife. I agree with the majority that the trial court appropriately awarded the wife the costs of bringing the contempt motion. I would also award the costs of preparing a posttrial memorandum to address the belatedly produced documents. These legal fees were incurred as a direct result of the grandparents' contempt of the subpoenas.

I would also find that the trial court acted within its discretion in adjudging the grandparents in contempt and requiring that they reimburse the wife for the costs of defending the access trial. It cannot be denied that the trial would have been severely curtailed, if not rendered unnecessary, by the production of the relevant documents. The documents were not limited to the email cited by the majority, wherein the grandfather stated, "Please do not let them know how much [the husband] is against seeing [the child] at all," but includes others reflective of the overwhelming rancor of the grandparents toward the wife and the husband's ambivalence and seeming lack of interest in seeing his own daughter. As noted by the trial court, the paternal grandparents "instructed the [h]usband's attorneys . . . to take actions, or not take actions, that delayed the custody trial, caused the [m]other to incur unnecessary counsel fees fighting these tactics, and, most importantly, were contrary to [the child's] best interests because they had a negative impact on her relationship with her [f]ather."