57 Elmhurst LLC v Morales (2024 NY Slip Op 50531(U))

[*1]

57 Elmhurst LLC v Morales

2024 NY Slip Op 50531(U)

Decided on May 7, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 7, 2024
Civil Court of the City of New York, Queens County

57 Elmhurst LLC, Petitioner-Landlord,

against
Luz Elena Morales, et al., Respondents-Tenants.

Index No. L&T 310271/23

Counsel for Petitioner:
Green & Cohen PC
Counsel for Respondent:
The Legal Aid Society

Logan J. Schiff, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of:
(a.) Respondent's motion to vacate the default judgment, dismiss the proceeding, and for sanctions against Petitioner for frivolous conduct (motion seq. #1): NYSCEF 5-11, 27-35; and
(b.) The court's own motion for sanctions against Petitioner: NYSCEF 11, 26-35, the court files in 57 Elmhurst LLC v Beatriz Castillo, LT-303770-23/QU, 57 Elmhurst LLC v Filpo, LT-312012-23/QU, 57 Elmhurst v Guarin, LT-303792-23 and 57 Elmhurst v Ruiz, LT-303801-23/QU.
Upon the foregoing cited papers, the decision and order on Respondent's motion to dismiss and for sanctions, and the court's own motion for sanctions is as follows:
 RELEVANT FACTUAL AND PROCEDURAL HISTORY
Background
In this summary nonpayment proceeding seeking $248 in rent that the Respondent Luz Elena Morales ("Respondent") never owed, the court must determine whether to sanction Petitioner 57 Elmhurst LLC ("Petitioner") for frivolous conduct in violation of 22 § NYCRR 130-1.1 ("Rule 130").
Petitioner is the owner of the subject 164-unit rent-stabilized building located at 94-25 57th Avenue, Queens, New York (the "premises"), one of over forty buildings owned by its [*2]parent company Zara Realty Holding Company ("Zara").[FN1]
Zara is not new to the residential real estate field. According to its website, it has been investing in rental housing in Queens since 1982.[FN2]

Zara is well acquainted with the requirements of the New York City Rent Stabilization Law (NYC Admin. Code § 26-501 et seq., hereinafter "RSL"), both by virtue of its portfolio of over 1,000 units and given its involvement in an enforcement action commenced by the New York Attorney General ("AG") in 2019 under New York State Div. of Hous. & Community Renewal v Zara Realty Holding Corp., NY Sup. Ct. Index No. 420245/2019. The AG suit accuses Zara of flouting the RSL by, among other things, charging illegal broker fees to affiliated entities to extract "key money," imposing unlawful vacancy and late fees, and improperly charging tenants for copies of keys (id. at NYSCEF 1, Complaint ¶ 4).[FN3]

In the present matter, the conduct subject to potential Rule 130 sanctions involves the maintenance of meritless nonpayment proceedings against rent-stabilized tenants residing at the premises. The respondents-tenants often owed no rent and were merely exercising their right to deduct $50 per month following the issuance of a permanent rent reduction order ("RRO") by the Division of Housing and Community Renewal ("DHCR") as authorized by RSL § 26-514. The RRO, entered under Docket Number JP110005OD on September 8, 2022, was based on DHCR's determination that Petitioner reduced space in the building's lobby to relocate the mailroom, and found that "in order to compensate the tenants for such decrease in service, the tenants' rent shall be permanently reduced by $50.00 per month effective the first of the month [*3]following the issue date of this order" (i.e. October 1, 2022) (NYSCEF 9).
Zara appealed the RRO via an administrative process called a Petition for Administrative Review ("PAR") under Docket Number KV110008RO, which was recently denied by the DHCR Deputy Commissioner on April 5, 2024.[FN4]
According to DHCR's rules as promulgated in the Rent Stabilization Code, the filing of the PAR operated to stay the collection of retroactive overcharge penalties but in no way stayed the prospective collection of rents during the appeal (see 9 NYCRRR ("Rent Stabilization Code") §2529.12).[FN5]
 Petitioner has cited the relevant DHCR regulations in this proceeding and prior cases (see, e.g., NYSCEF 32 at 5) and therefore knew, or certainly should have known, that it could not sue tenants for the $50 covered by the RRO after October 1, 2022, during the pendency of the PAR. Yet, in clear disregard of the law, Petitioner commenced a raft of nonpayment proceedings starting in March 2023 that did not disclose or give effect to the DHCR order, in some cases suing tenants for as little as $150 for "arrears," that were entirely subsumed by the RRO.[FN6]
Petitioner continued to maintain these proceedings and charge tenants the $50 per month even after this court implored Petitioner and its counsel to stop, first orally during court appearances, and then by written order under threat of sanctions. Even today, after assuring this court in an affidavit by its principal Rajesh Subraj that it would cease this practice, it continues to litigate some of these cases without legal basis.
The Court's Initial Warning to Petitioner — 57 Elmhurst LLC v Beatriz Castillo
The first time this court learned of Petitioner's failure to abide by the terms of the RRO was in the nonpayment proceeding 57 Elmhurst LLC v Beatriz Castillo, LT-303770-23/QU. That petition, verified by Rajesh Subraj and filed by Zara's long-time attorney Curtis Harger on March 2, 2023, sought $200 in rent based on an alleged default of $50 per month from October 2022 through January 2023, against a tenant who, per Zara, had resided at the premises since 1999 (see LT-303770-23/QU at NYSCEF 1).[FN7]
In fact, all of these "arrears" were covered by the RRO, and the proceeding was frivolous. Making matters worse, Petitioner did not plead the existence of the RRO or why it believed it was exempt from the consequences of DHCR's order, a material omission of the ultimate facts in violation of RPAPL 741 (see Jamaica Seven v Villa, 67 Misc 3d 138[A] [App Term, 2d Dept, 2d, 11th &13th Jud Dists 2020] [involving another Zara-owned building where the petition failed to disclose critical information to the court that warranted [*4]dismissal]).
After the tenant in Castillo did not answer following affix and mail service, Petitioner sought a default judgment on March 31, 2023 (see LT-303770-23/QU at NYSCEF 4). In the affidavit of merit, signed by an employee named Amaranth Kuppannan and notarized by Daniel De Castro, there is again no mention of the RRO — it appears Zara was prepared to evict a long-term rent-stabilized tenant for $200 she did not owe on default based on materially false representations.
On July 18, 2023, before a default judgment was entered, Ms. Castillo filed a pro se order to show cause seeking to vacate her default, stating that was she did not believe she needed to come to court because she owed no rent, alleging the arrears were fully covered by the RRO, and attaching the relevant DHCR order (id. at NYSCEF 7).
The court heard argument in Castillo on September 14, 2023, at which time the Legal Aid Society ("LAS") appeared for the respondent. During argument, the court inquired of Petitioner's counsel Maria Tibas of the firm Schnitzer and Tibas, acting as of counsel for Green & Cohen PC ("Green & Cohen") the incoming counsel for the deceased attorney of record Curtis Harger, why Zara would file what appeared to be a meritless case. After conferring with someone at Zara by phone, in all likelihood Zara's employee Daniel De Castro,[FN8]
Ms. Tibas advised the court that Petitioner felt it was entitled to proceed, notwithstanding the unequivocal DHCR order for the $50 per month, because Ms. Castillo's rent is frozen through the Senior Citizen Rental Increase Exemption ("SCRIE") program. SCRIE freezes the legal rent for eligible low-income tenants who are at least 62 years old by covering any future lawful increases through a tax abatement administered by the Department of Finance ("DOF") (see RSL § 26-509). According to Ms. Tibas, Zara is of the opinion that any reduction in the legal rent for a tenant with SCRIE benefits following the issuance of a permanent rent reduction should reduce the DOF tax abatement portion rather than the affected tenant's rent share.
It is unclear how Zara came to its position with respect to the interplay of SCRIE benefits and permanent rent reduction orders, as it is directly contradicted by the plan language of the RSL, which provides that:
When a rent reduction order is issued by the state division of housing and community renewal, the amount of the reduction shall be subtracted from the rent payable by the tenant specified in a currently valid [SCRIE] rent exemption order issued pursuant to this subdivision. The landlord may not collect from the tenant a sum of rent exceeding the [*5]adjusted amount while the rent reduction order is in effect.
RSL § 26-509(b)(3)(iii) (emphasis added).[FN9]
The court advised Ms. Tibas that Zara's unpled "theory" as to SCRIE was specious and suggested that Zara withdraw the proceeding immediately in lieu of the court's issuing an adverse order.[FN10]
Ms. Tibas then called her client at Zara and informed the court that she had received permission to discontinue the matter. Before so ordering the stipulation of discontinuance, the court reiterated to Ms. Tibas on the record that she should inform Zara to cease the maintenance or commencement of similar proceedings for arrears covered by the RRO, including for tenants covered by SCRIE.[FN11]

Relevant Background in the Current Proceeding
Petitioner did not heed the court's advice in Castillo. Instead, eleven days later, on September 25, 2023, it took a default judgment against Luz Elena Morales, the Respondent and tenant of record in the subject proceeding, who like Ms. Castillo owed no rent and was simply deducting $50 per month as authorized by the RRO.
57 Elmhurst LLC v Morales, LT-310271-23/QU, was filed by the attorney Autrey Johnson in June 2023. The Petition sought $248.80 for alleged arrears accruing over five months from December 2022 to April 2023, essentially $50 per month, all of which it is now conceded by Zara's counsel was covered by the DHCR order.
Ms. Morales, who according to the Petition has resided in the premises since 2008, interposed a pro se answer on July 20, 2023, claiming that all rent had been paid (see NYSCEF 4). The proceeding was calendared for September 25, 2023, on a holiday during which the undersigned judge was absent. Respondent, under the impression that her newly retained counsel LAS would be appearing for her, did not appear, nor did LAS due to an apparent scheduling [*6]error. As a result, Petitioner obtained a default judgment for the $248.80 sought in the Petition, so ordered by the Honorable Judge Kitson on September 25, 2023 (see NYSCEF 5), who, covering for the part for the undersigned judge, was never made aware of the RRO, or that Respondent owed nothing.
Three days after the default judgment was entered, Respondent, now formally represented by LAS, moved by order to show cause to vacate the default, dismiss the proceeding, and for legal fees for frivolous conduct pursuant to Rule 130 based on Petitioner's improper commencement of this proceeding (see NYSCEF 6). In the motion, counsel for Respondent claimed law office failure as a reasonable excuse for the default, and for a meritorious defense attached a copy of the DHCR $50 rent reduction order, which counsel alleged, albeit without a client affidavit in support, entirely encompassed the arrears sought in the Petition (see NYSCEF 9).
In signing LAS's order to show cause on September 29, 2023, the court added its own interim order to the cover page, providing as follows:
Petitioner is ordered to IMMEDIATELY review all current and future nonpayment proceedings to ensure they are complying with the pending DHCR rent reduction orders at this building. If the court discovers any further instances of Petitioner disregarding DHCR rent reduction orders, Petitioner will be subject to sanctions for frivolous conduct.
See NYSCEF 11.[FN12]
The court heard argument on Respondent's motion on October 16, 2023, at which time the parties stipulated to vacatur of the default judgment and adjourned the matter to November 30, 2023, for argument on the remaining branches of the motion. 
What followed were a series of adjournments, during which the court repeatedly encouraged Petitioner and its counsel to take seriously its order to comply with the RRO at the premises and to stop wasting the court's time with frivolous filings. At one point on October 17, 2023, the court advised Petitioner's counsel that if it submitted an affidavit from a Zara principal committing to complying with the terms of the RRO, the court would be inclined to deny the motion for sanctions and let the matter rest. Such affidavit was not initially forthcoming, however by order to show cause dated December 6, 2023, Petitioner through its principal Rajesh Subraj moved to discharge its counsel Autrey Johnson, stating that it had provided the "letter" requested by the court to him, but that Mr. Johnson had failed to file it. The motion attached a copy of the letter, dated November 30, 2023, signed by Mr. Subraj, which stated as follows:
I had given authority to my attorneys to discontinue this case without prejudice the last time the case was on. In addition, pending an order of determination of the Owner/Petitioner's PAR under docket #KV11008RO, underlying docket #: JP110005OD, the management office will not pursue an action for the $50.00 rent owing by the tenants.
NYSCEF 21-23. Before this motion was heard, Petitioner submitted a substitution of counsel dated December 14, 2024, whereby the law firm Green & Cohen took over as counsel for Mr. [*7]Johnson, and now appears to be Zara's primary counsel on all L&T matters in Queens housing court.[FN13]

Separately on December 6, 2023, the court was presented a pro se stipulation for allocution in 57 Elmhurst LLC v Filpo, LT-312012-23/QU, another nonpayment proceeding at the premises in which the tenant was agreeing to pay $5,116 in arrears. In conducting a thorough allocution of the stipulation as required by RPAPL 746, which directs the court to, inter alia, ensure that "that the unrepresented litigant's claims or defenses are adequately addressed in the stipulation," (see RPAPL 746[2][c][v]), the court asked the respondent if Zara had credited her with the RRO. After Ms. Filpo replied that she was uncertain, the court inquired of Petitioner's counsel, Michael Schnitzer of Schnitzer & Tibas, of counsel that day to Green & Cohen. Mr. Schnitzer called someone at Zara and then stated that the stipulation would need to be revised to afford the respondent a credit of $750 to account for the RRO. The court, at this point deeply perturbed by Zara's continued defiance of its orders and directives, reiterated to Mr. Schnitzer on the record that he should advise Zara to immediately stop disregarding the RRO, and that there would be serious consequences for continued noncompliance.
Meanwhile, at a court appearance on December 20, 2023, following the substitution of counsel from Autrey Johnson to Green & Cohen, the court urged the parties to resolve the matter with a stipulation that included a more detailed commitment by Zara to take seriously the RRO. The court suggested that an affidavit from Mr. Subraj, rather than a mere letter, would provide the court with more confidence that Zara was prepared to finally take this matter seriously in considering whether to impose sanctions. The matter was adjourned to February 6, 2024, for further briefing and argument.
Prior to the hearing date, on its own motion the court issued an order dated December 21, 2023, directing Petitioner to show cause on February 6, 2024:
[W]hy it should not be sanctioned for frivolous conduct in disregarding the court's order dated September 29, 2023 (NYSCEF 11), directing Petitioner to immediately ensure that it complied with the building-wide $50 per month permanent rent reduction order issued by the DHCR under Docker Number JP 110005 OD in all pending and future proceedings before the court by subsequently presenting a stipulation for allocution in LT312012/23-QU on December 6, 2023, that improperly sought arrears subject to the DHCR order, and which was only modified upon the court's inquiry.
See NYSCEF 26.
LAS submitted supplemental papers with respect to Respondent's motion to dismiss and for sanctions on February 6, 2024, noting that notwithstanding the letter from Mr. Subraj, Zara had failed to withdraw or even acknowledge to the court the lack of merit in several pending cases including LT-303801-23/QU, LT-303792-23/QU, LT-310268-23/QU (see NYSCEF 30).
At a court appearance on February 6, 2024, the parties adjourned the matter for argument on February 29, 2024, in order to attempt settlement. In adjourning the matter, the court [*8]reminded Petitioner that it had before it not only LAS's motion, but the court's own motion and again recommended it file an affidavit from Mr. Subraj that more unequivocally committed to complying with the DHCR order than his November 30, 2023, letter to the court.
An affidavit from Mr. Subraj was ultimately submitted on February 21, 2024. Theaffidavit, like the prior letter, avers that Mr. Subraj has authorized discontinuance of the subject proceeding without prejudice pending the result of the PAR. Mr. Subraj further affirms that Zara will not "pursue any new action for the $50.00 rent owing by the tenants," albeit without clearly addressing Zara's position with respect to other pending cases that fail to credit the RRO (NYSCEF 32).
An attorney affirmation from Zara's attorney Michael Cohen dated February 20, 2024, meanwhile concedes that the subject proceeding was wrongly filed but suggests that sanctions are not warranted because the rent sought was a good faith albeit mistaken approximation of what was due (see NYSCEF 31 at ¶¶ 21-23). Separately, Mr. Cohen notes that to the extent Zara is still maintaining several nonpayment cases against tenants at the premises for the $50 RRO portion, in one case (LT-310268-23/QU) the $50 per month encompasses only a small fraction of the arrears, and in two others (LT-303792-23/QU and LT-303801-23/QU) the tenants receive a SCRIE rent freeze, so in Zara's view there is an open legal question as to whether the tenant or DOF is entitled to the benefits of the rent reduction order.[FN14]
Notably, Mr. Cohen's brief offers no explanation for why, after the court issued its order on September 29, 2023, directing Zara to immediately cease charging tenants for rent covered by the RRO or be subject to sanctions, it presented the court with a pro se stipulation on December 6, 2023 in another case at the premises, LT-312012-23/QU, that failed to credit $750 of rent covered by the order.
The court heard oral argument on the motions on February 29, 2024, and ultimately reserved the decision following the parties' inability to reach a settlement.
DISCUSSION

 Respondent's Motion

Respondent has moved to dismiss, arguing the entire $248.80 sought in the Petition was encompassed by the $50 per month permanent rent reduction order in place at the premises since October 1, 2022 (see NYSCEF 9), rendering the rent demand and nonpayment petition fatally defective.[FN15]

The statutory basis for Respondent's motion is unclear, as the notice of motion recites CPLR 3211(a)(1) and (a)(8), whereas the brief in support seeks summary judgment pursuant to CPLR 3212. The motion is also lacking documentary evidence or an affidavit from Respondent [*9]addressing whether the rent sought in the Petition was entirely coextensive with the $50 per month subject to the RRO or based on some other shortfall in payment. While these defects might be grounds for denial of the motion, Petitioner has conceded in its opposition papers that it was incorrectly suing for rent covered by the RRO when it commenced this case (see Cohen affirmation ¶ 21, NYSCEF 31), and Petitioner's principal avers in an affidavit that he has authorized "discontinuance without prejudice" (see NYSCEF 32). Accordingly, Respondent's unopposed motion to dismiss is granted, and the proceeding is dismissed without prejudice to refiling if Petitioner prevails in a further appeal of the RRO.
The remaining branches of Respondent's motion, including the portion seeking legal fees as a sanction for frivolous conduct, are denied.[FN16]

The Court's Own Motion for Sanctions
By order dated December 21, 2023, this court directed Petitioner to show cause on February 6, 2024, why it should not be sanctioned for frivolous conduct for violating the court's September 29, 2023 order, which provided that:
Petitioner is ordered to IMMEDIATELY review all current and future nonpayment proceedings to ensure they are complying with the pending DHCR rent reduction orders at this building. If the court discovers any further instances of Petitioner disregarding DHCR rent reduction orders, Petitioner will be subject to sanctions for frivolous conduct.
See NYSCEF. [FN17]
The September order was issued after the court observed Petitioner repeatedly maintaining meritless nonpayment proceedings seeking rent that was not collectible due to the DHCR rent reduction order #JP110005OD, which authorized tenants to deduct $50 per month as of October 2022 to compensate for a reduction in lobby space. In some cases, such as 57 Elmhurst LLC v Beatriz Castillo, LT-303770-23/QU seeking $200 in arrears, and the instant proceeding 57 Elmhurst LLC v Morales, LT-310271/23-QU seeking $248 in arrears, the entire balance sought by Petitioner was encompassed by the RRO.
Petitioner violated the September 29, 2023 order in two ways. First and most significantly, on December 6, 2023, after Petitioner's principal Rajesh Subraj signed a letter dated November 30, 2023, expressing Zara's commitment to honoring the RRO (see NYSCEF 32), Petitioner presented the court with a pro se stipulation against another tenant in the subject premises, Glorivy Filpo, in LT-312012-23/QU, that failed to credit the DHCR order. Only after the court on its own initiative inquired of Petitioner's counsel as to whether the RRO was being [*10]considered in the arrearage calculation was the agreement revised downwards by $750 from $5,116 to $4,366 (see LT-312012-23/QU at NYSCEF 5). Second, immediately following the revision of the stipulation, the court expressed to counsel on the record its extreme displeasure with Petitioner's continued defiance of its order and urged Petitioner to immediately cease this behavior. And yet, at the time the instant motion was argued on February 29, 2024, Zara had not attempted to withdraw at least two other defective nonpayment proceedings seeking arrears entirely covered by the RRO, continuing to offer indefensible justifications for ignoring the RRO due to the respondents' receipt of SCRIE benefits that needlessly burden this court with unnecessary motion practice.[FN18]

A court may impose a sanction against a party or an attorney for frivolous conduct, including conduct which "'is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law' or 'asserts material factual statements that are false'" (Bahamonde v State of New York, 269 AD2d 551 [2d Dept 2000], quoting 22 § NYCRR 130-1.1[a], [c][1] and [3]; see also Minister, Elders & Deacons of Reformed Protestant Dutch Church v. 198 Broadway, Inc., 76 NY2d 411, 414 [1990]). "Sanctions are retributive, in that they punish past conduct. They also are goal oriented, in that they are useful in deterring future frivolous conduct not only by the particular parties, but also by the bar at large. The goals include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics." (Levy v Carol Mgmt. Corp., 260 AD2d 27, 34 [1st Dept 1999]; see also 13 E. 124 LLC v J&M Realty Servs. Corp., 222 AD3d 446 [1st Dept 2023]; Boye v Rubin & Bailin, LLP, 152 AD3d 1 [1st Dept 2017]).
Rule 130 sanctions are not a remedy that should be invoked lightly. "In considering the imposition of sanctions the court must weigh the potential effect on inhibiting good-faith arguments to modify existing law" (W.J. Nolan & Co. v Daly, 170 AD2d 320, 321 [1st Dept 1991] [internal citation omitted]). Thus, even only "somewhat colorable" arguments will generally not warrant sanctions when not made in bad faith or for improper purposes (Cepeda v City of New York, 211 AD3d 570, 571 [1st Dept 2022]; see also Carde Rodriguez, 189 AD3d 498, 498 [1st Dept 2020]); Miller v Miller, 96 AD3d 943 [2d Dept 2012]; Kreme v Benedict P. Morelli & Assoc., P.C., 80 AD3d 521, 523 [1st Dept 2011]; Gavilanes v Dilan, 281 AD2d 546 [2d Dept 2001]). Nonetheless, "to avoid sanctions, at the least, the conduct must have a good faith basis" (Dank v Sears Holdings Mgt. Corp., 69 AD3d 557, 558 [2d Dept 2010]). "Relitigating already-decided matters is sanctionable . . . as is 'impos[ing] on the judicial system an unnecessary burden" (Matter of Hoppenstein, 209 AD3d 492, 493 [1st Dept 2022]).
In the present matter, several factors militate in favor of imposing Rule 130 sanctions, including Petitioner's prior notice of the offending conduct. "A factor to consider in determining frivolity is whether the [party's] conduct was continued when its lack of merit was apparent or should have been apparent" (Matter of Hoppenstein at 494 [1st Dept 2022] [internal citations omitted]; see also Klenfner v Shahid, 71 Misc 3d 130[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]; 22 NYCRR § 130-1.1[c]). Here, the court's September 29, 2023 order was issued only after the court previously advised Petitioner via its counsel on September 14, 2023, in connection with 57 Elmhurst LLC v Beatriz Castillo, that suing tenants for rent they did not [*11]owe was conduct that was "completely without merit," especially in cases like Castillo where the petition sought rent entirely covered by the RRO. The court further informed counsel that Petitioner should withdraw any similar pending petitions, and that there was no credible legal argument for excluding tenants in receipt of SCRIE benefits.
On September 25, 2023, a mere eleven days after the court's warning in Castillo, Petitioner took a $248 default judgment against Respondent Morales, another long-term rent-stabilized tenant who owed nothing and was simply exercising her right to withhold $50 per month based on DHCR's lawful order.[FN19]
While this indefensible behavior alone would justify sanctions under Rule 130, even at this point, as frustrated as the court was with Petitioner's conduct, it did not set the matter down for a sua sponte sanctions hearing in an attempt to give Petitioner every possible benefit of the doubt. Instead, the court issued its September 29, 2023 order warning Petitioner that additional misconduct (i.e. a third strike) would result in sanctions. Yet rather than immediately cease the offending conduct, Petitioner unequivocally violated this order by presenting a pro se stipulation to the court on December 6, 2023, that did not credit the RRO, demonstrating a pattern of willful defiance of the court mandates that is another factor warranting sanctions (see Matter of Hoppenstein, 209 AD3d at 492-93 [1st Dept 2022] [affirming sanctions award based on the "repeated repudiation . . . of the court's orders"]; Levy, 260 AD2d at 34 [1st Dept 1999]).
It is troubling that the court's admonitions and orders appear to have had no meaningful impact on Petitioner's conduct. Nor is Zara's failure to comply with the RRO the only instance in the last year where the court has observed Zara distorting unambiguous provisions of the Rent Stabilization Law seemingly for its pecuniary benefit. For instance, in 57 Elmhurst v Rafael Castillo, LT-55521-20/QU, a case involving a different building-wide rent reduction order at the subject premises under Docket Number HP110012B based on Zara's failure to provide adequate keys to tenants, Zara sued a tenant for the full contract rent without crediting the order. When challenged on this behavior in a motion to dismiss, Zara's principal Mr. Subraj offered the dubious explanation that Petitioner did not abide by the order because it incorrectly assumed it would be revoked retroactively (see 57 Elmhurst v Castillo, 80 Misc 3d 1205[A] [Civ Ct, Queens Co 2023]).
More recently, in LT-315626-23/QU, involving another building owned by Zara, the court received a proposed pro se stipulation for allocution on January 31, 2024, in which the tenant Jean David Faublas was agreeing to pay approximately $4,000 in arrears. When questioned by the court as to the source of the rent owed, the tenant stated that while he has a rental voucher administered by the Human Resources Administration ("HRA") through the City FHEPS program, which normally covers all rent beyond his fixed 30% income monthly share, the arrears accrued unexpectedly after he signed a two-year renewal lease offered by Zara commencing June 1, 2023, that had not been approved by HRA. This lease increased respondent's preferential rent from $1,835 to $2,275, a 24% increase that far exceeded the 5% amount legally permitted during that time frame (see RSL § 26-511(c)(14), Rent Guidelines [*12]Board Order #54).[FN20]
The court inquired of Zara's counsel (that day Mr. Schnitzer) as to the basis of this seemingly unlawful increase. Counsel called his contact at Zara and then informed the court that Zara is of the opinion that it can revoke a preferential rent where the tenant has a rental voucher that might otherwise cover the increase. In fact, this is yet another baseless theory of Zara's, as the law is clear that preferential rents cannot be revoked during the life of a tenancy and are subject to statutorily approved annual guidelines increases following the enactment of the Housing Stability and Tenant Protection Act of 2019 on June 14, 2019 (see L 2019, Ch 36 § 1, part E, § 2).
To be clear, this court's decision whether to impose sanctions is not predicated on Zara's actions in matters unrelated to the RRO. Nonetheless, in determining whether a party has acted in bad faith, a key factor when considering Rule 130 sanctions, the court may "look comprehensively at past conduct . . . and not just the question whether a strand of merit, illusory at that, might be parsed from the overwhelming pattern [of behavior]." (Levy, 260 AD2d at 32-33 [1st Dept 1999]; see also Santaliz v OR FM Assoc., 75 Misc 3d 1201[A] [Civ Ct, Kings Co 2022]). Here, Zara's consistent lack of candor to the court, whether in default judgment applications, eviction petitions, or stipulations with unrepresented parties, bolsters the court's conclusion that Petitioner acted in bad faith, rather than through mere inadvertence or mistake, when it failed to comply with the court's September 29, 2023 order.
Zara's deceptive behavior is particularly problematic in the context of default judgment applications, in which the legislature has authorized a streamlined procedure, and where a duty of candor is critical. RPAPL 732(3) directs the court to "render a judgment in favor of the petitioner" in a nonpayment proceeding where the respondent does not answer within ten days of service. Based on this language, the Court of Appeals has held that the lower court is without discretion to schedule an inquest to test the merits of a facially sufficient verified pleading in lieu of simply deciding the default application on the papers as "the statute does not authorize the Judges to fashion additional, individualized protections upsetting the legislative scheme" (Brusco v Braun, 84 NY2d 674, 682 [1994]). RPAPL 732(3) permits no exceptions, even in anomalous cases like Castillo where a party with a history of misleading communications was suing a long-term senior for only $200, requiring the court to rely on the good faith of the petitioners in drafting pleadings. Yet Zara regularly demonstrates an absence of good faith by failing to disclose the existence of critical information in default judgment applications like the existence rent reduction orders, conduct which undermines RPAPL 732(3) goal to "protect a landlord's right to recover premises occupied by a nonpaying tenant promptly [while] also ensur[ing] that tenants are not unjustly evicted from their homes" (Brusco, 84 NY2d at 681 [1994]).
The court notes that much of Zara's behavior could be avoided by meaningful oversight from its counsel. Rather than act as a check on frivolous filings as an attorney ought to do given their obligation to undertake a reasonable review of all papers they sign for legal sufficiency (see 22 § NYCRR 130-1.1a[b]), Zara's attorneys too often seem to rubber stamp proposed filings, [*13]failing to exercise even a modicum of due diligence.[FN21]
In the instant matter, this nearly cost a long-term rent-stabilized tenant her home of 15 years based on a patently defective petition. [FN22]

Given the ample evidence of bad faith, Zara's violation of the court's September 29, 2023 order warrants sanctions, as "[c]ompliance with court orders is essential to the integrity of our judicial system and thus, litigants must not be allowed to ignore court orders with impunity" (Matter of Grayson v New York City Dept. of Parks & Recreation, 99 AD3d 418 [1st Dept 2012] [internal citations and quotations omitted]). Nor will the court continue to indulge Zara's seemingly endless capacity for creative misinterpretations of the law as an excuse for its actions as "[i]t is axiomatic that ignorance of the law is not a defense for the failure to comply with [*14]unambiguous legal obligations" (Montera v KMR Amsterdam LLC, 193 AD3d 102, 107 [1st Dept 2021]). This is particularly the case for a large landlord like Zara, whose refusal to comply with the RSL "amounts to willful ignorance, which constitutes willful conduct, particularly [for] sophisticated property managers and owners" (Grady v. Hessert Realty L.P., 178 AD3d 401, 405 [1st Dept. 2019]).
Accordingly, for the foregoing reasons, the court finds that Petitioner 57 Elmhurst LLC's frivolous conduct in violating the court's September 29, 2023 order warrants the imposition of monetary sanctions in the amount of $5,000 pursuant to 22 NYCRR § 130-1.1. The court hereby orders Petitioner to deposit the $5,000 with the clerk of the civil court of Queens County, to be transmitted to the Commissioner of Taxation and Finance (see 22 NYCRR § 130-1.3), within 20 days, with proof of payment to be filed on NYSCEF by May 31, 2024.
The court recognizes that a fine of $5,000 will have no meaningful financial impact on a landlord of Zara's size, however it is the court's hope that it will accomplish what its prior admonitions and orders have not: respect for the court, the rule of the law, and tenants in Zara's buildings, the vast majority of whom typically navigate housing court without the benefit counsel. If instead Zara continues to submit materially false or misleading papers that fail to comply with the RSL or other laws, the court will not hesitate to impose additional sanctions up to the $10,000 maximum per occurrence as authorized by 22 NYCRR § 130-1.2.
Accordingly, it is hereby
ORDERED that Respondent's motion to dismiss the proceeding is granted, and the Petition is dismissed without prejudice to refiling in the event Petitioner prevails in its appeal of the DHCR rent reduction order #JP110005OD at the subject premises; and it is further
ORDERED that the remaining branches of Respondent's motion are denied; and it is further
ORDERED that on the court's own motion Petitioner 57 Elmhurst LLC is sanctioned $5,000 for frivolous conduct pursuant to 22 § NYCRR 130-1.1 for violating this court's September 29, 2023, order directing Petitioner to immediately cease maintaining cases against tenants at the premises that did not give effect to DHCR rent reduction order #JP110005OD; and it is further
ORDERED that Petitioner is to deposit the $5,000 sanction with the clerk of the civil court of Queens County, to be transmitted to the Commissioner of Taxation and Finance pursuant to 22 NYCRR § 130-1.3, within 20 days of this order, with proof of payment to be filed on NYSCEF by May 31, 2024.
This constitutes the decision and order of the court.
Hon. Logan J. Schiff, J.H.C.
Dated: May 7, 2024
Queens, New York

Footnotes

Footnote 1:An approximate list of Zara's 44-building portfolio is available at: 
https://whoownswhat.justfix.org/en/address/QUEENS/94-25/57%20AVENUE/portfolio. While most of the building are organized as separate limited liability companies ("LLCs"), Zara's employees, principals, and attorneys routinely refer to themselves in court and public communications as working for the Zara portfolio, and the LLCs share the same members and managing agents (see, e.g., 
https://zararealty.com/our-company; 
https://observer.com/2012/02/zara-realty-acquires-queens-portfolio; 
https://therealdeal.com/new-york/2020/05/05/judge-denies-zara-realtys-bid-to-dismiss-ag-lawsuit; Woodhull Park 191 LLC v Middleton, LT-305893-23, Decision and Order dated January 30, 2023 at 2-3, NYSCEF 15). According to a New York Attorney General complaint (see NY Sup. Ct. Index No. 420245/2019, NYSCEF 1), Zara is composed of principals from the Subraj and Sohbraj families, including Rajesh Subraj aka Tony Subraj, the head officer and agent of the subject premises, who is responsible for managing much of Zara's day-to-day landlord-tenant litigation. Mr. Subraj routinely verifies eviction petitions and submits affidavits in support of motions, including in this proceeding (see, e.g., NYSCEF 1 and 22). 

Footnote 2:See 
https://zararealty.com/our-company.

Footnote 3:While the action remains ongoing, a recent decision by Justice Edwards found sufficient likelihood of success on the merits to impose a preliminary injunction against Zara, enjoining it "from collecting broker's fees or any other fees in excess of the legal regulated rent from rent-stabilized tenants" (New York State Div. of Hous. & Community Renewal v Zara Realty Holding Corp., 2023 NY Slip Op 32843[U] [Sup Ct, NY Co 2023]).

Footnote 4:Zara has sixty days to challenge the PAR denial in state court via an Article 78 proceeding.

Footnote 5:RSC § 2529.12 provides: "The filing of a PAR against an order, other than an order adjusting, fixing or establishing the legal regulated rent, shall stay such order until the final determination of the PAR by the commissioner" (emphasis added).

Footnote 6:See, e.g., LT-303770-23/QU, LT-303792-23/QU, LT-303801-23/QU, LT-310268-23/QU, LT-310271-23/QU, LT-312012-23/QU.

Footnote 7:Zara typically uses the same counsel for all its housing court cases. Until his death on or around June 3, 2023, this was the attorney Curtis Harger, a solo practitioner. After Mr. Harger's passing Zara briefly divided up L&T cases between the law firm Green & Cohen and the solo practitioner Autrey Johnson, however as of December 2023 it appears Green & Cohen is handling all of Zara's cases.

Footnote 8:Although Zara does not appear to employ an in-house counsel, the non-lawyer Mr. De Castro acts as Zara's primary in-court representative. He is the person Zara's attorneys normally call during court appearances to address legal questions or obtain settlement authority, and he routinely appears and testifies at inquests and trials, sometimes identifying himself as a managing agent and other times as an employee in the legal affairs office (see, e.g., Jamaica Seven LLC v Douglas, 2021 NYLJ LEXIS 1017 [Civ Ct, Queens Co 2021]; Hillside Park 168 LLC v Khan, 59 Misc 3d 736 [Civ Ct, Queens Co 2017]; Woodhull Park 191 LLC v Middleton, LT-305893-23, Decision and Order dated January 30, 2023 at 2-3, NYSCEF 15). Mr. De Castro also represents Zara in dozens of commercial small claims actions against tenants for non-possessory charges such as legal and late fees (see, e.g., CC-030234-23/QU, CC-030235-23/QU, CC-030387-22/QU, CC-030035-21/QU).

Footnote 9:While the statute is without ambiguity and does not distinguish between temporary and permanent rent reduction orders, affording tenants with SCRIE the benefits of permanent rent reduction orders is also consistent with the salutary purpose of RSL § 26-514 in authorizing such orders to "motivate owners of rent-stabilized housing accommodations to provide required services, compensate tenants deprived of those services, and preserve and maintain the housing stock in New York City." (Matter of Cintron v Calogero, 15 NY3d 347, 357 [2010] [internal citation omitted]).

Footnote 10:Besides being meritless, the court finds Zara's theory to be disingenuous, as it at no point has suggested it reached out to DOF to suggest it reduce the tax abatement for SCRIE tenants in the building, that it received any information from DOF or elsewhere supporting its "novel" interpretation of the law, or that it ever had any remotely credible reason to think the annual tax benefit would be adjusted downwards.

Footnote 11:While the court has no reason to doubt that Ms. Tibas communicated this information directly to her contact at Zara, "the knowledge of [a party's] counsel, who is [its] agent, is properly imputed to [the party]" (Wilmington Trust v MC-Five Mile Commercial Mtge. Fin. LLC, 171 AD3d 591 [1st Dept 2019]).

Footnote 12:In addition to the building-wide RRO under Docket JP110005OD that is the subject of this proceeding, there is at least one other building-wide rent reduction order at the premises, which Zara has also failed to abide by (see 57 Elmhurst v Rafael Castillo, 80 Misc 3d 1205[A] [Civ Ct, Queens Co 2023]).

Footnote 13:The court is cognizant that there may have been communications lapses between Zara and its former counsel Autrey Johnson in this proceeding and has afforded Zara considerable leniency as a result. Nonetheless, it appears beyond dispute that some time before November 30, 2023, the date Mr. Subraj signed his letter, Zara's principals were aware of the court's directives with respect to the RRO.

Footnote 14:As the court previously noted supra at 6, the law is clear that a SCRIE recipient is entitled to deduct any rent subject to a rent reduction order from the tenant share. Moreover, after the court heard argument on February 29, 2024, the Honorable Judge Nembhard issued a decision in one of the two referenced cases involving SCRIE, 57 Elmhurst v Guarin, LT-303792-23 [Civ Ct, Queens Co March 12, 2024], rejecting Zara's argument and dismissing the proceeding for failing to properly credit the rent reduction order. The other matter, LT-303801-23/QU, is pending before the undersigned and has been adjourned to May 9, 2024, for argument on a motion to dismiss.

Footnote 15:The default judgment was vacated by stipulation dated October 16, 2023 (NYSCEF 13).

Footnote 16:While the court agrees with Respondent that this proceeding was improperly commenced, the decision to impose sanctions is ultimately within the discretion of the court (see Gowen v Helly, 2024 NY Slip Op 02278 [1st Dept 2024]; Groeza v Lagoutova, 67 AD3d 611 [1st Dept 2009]). In this case, the court finds that it is not Petitioner's initial filing, but rather its continued defiance of court's orders and directives after being made aware of its offending conduct that warrants the imposition of sanctions.

Footnote 17:22 NYCRR § 130-1.1[d] allows a court to impose sua sponte sanctions on a party or their attorney, so long as they are given adequate notice and a reasonable opportunity to be heard (see Matter of Hunte v Johnson, 221 AD3d 813 [2d Dept 2023], citing LeBoeuf v Greene, 216 AD3d 1149, 1151 [2d Dept 2023]).

Footnote 18:See LT-303792-23/QU and LT-303801-23/QU and discussion supra related to SCRIE at 6 and 11. 

Footnote 19:Although the proceedings in Castillo and the present matter are equally baseless, the court notes that it does not appear that Respondent Morales is in receipt of SCRIE benefits, so even crediting Zara's unfounded theory as to SCRIE, there was no conceivable justification for taking a default judgment against Respondent.

Footnote 20:See 
https://rentguidelinesboard.cityofnewyork.us/rent-guidelines/apartment-loft-orders-explanatory-statements.

Footnote 21:The court acknowledges that Zara's current counsel Green & Cohen was not responsible for filing the nonpayment proceedings at issue in this decision.

Footnote 22:The court is also concerned that someone at Zara may have engaged in the unauthorized practice of law. For many years Zara's primary attorney in landlord-tenant matters was the solo practitioner Curtis Harger. Although, based on the court's inquiries, Mr. Harger was neither seen in person or virtually since at the least early 2022, he continued to maintain a prolific presence on NYSCEF, filing dozens of evictions petitions and hundreds of other papers. According to his obituary as published by the Sydney Daily News on June 16, 2023, Mr. Harger passed away on June 3, 2023, in Myrtle Beach, South Carolina (see 
https://www.legacy.com/us/obituaries/sidneydailynews/name/curtis-harger-obituary?id=52255336). Yet, Mr. Harger was allegedly attorney-verifying petitions through May 31, 2023, only days before he died (see, e.g., LT-309820-23/QU at NYSCEF 1). And after he passed away, someone used Mr. Harger's NYSCEF account to initiate numerous filings on NYSCEF, including the commencement of at least eight eviction petitions (see LT-309785-23/QU, 309797-23/QU, 309788-23/QU, 309817-23/QU, 309818-23/QU, 309819-23/QU, 309820-23/QU, 310009-23/QU). While all the petitions were allegedly signed prior to Mr. Harger's passing, whoever filed these documents did not disclose their identity via a NYSCEF third party e-filing authorization, instead purporting to file them under Mr. Harger's name. Moreover, the filings included other ancillary documents such as notices of electronic e-filing instructions that bear Mr. Harger's electronic signature and are dated after his death (see, e.g., LT-309785-23/QU at NYSCEF 3, signed June 5, 2023). Besides raising the specter of the unauthorized practice of law, this behavior had significant consequences for some litigants appearing before the undersigned. For instance, in one nonpayment, LT-320048-22/QU, someone at Zara authorized the eviction of the respondents on default on June 16, 2024, after Mr. Harger had passed away and before a substitution of counsel was filed. Perhaps had an attorney reviewed the file, they would have realized that one of the respondents had appeared in January 2023 in a parallel nonpayment for a different period of arrears, 311472-22/QU, and notified the court of a pending application for assistance under the Emergency Rental Assistance Program ("ERAP"), thereby effectuating an automatic stay of all eviction proceedings (see L 2021, Ch 56, Part BB, Subpart A, § 8, as amended by L. 2021, Ch 417, Part A, § 4). Pursuant to Administrative Order 34/22, Zara was required to notify the court of this ERAP application in every pending case, including LT-320048-22/QU, before proceeding with an eviction, which it failed to do.